[Cite as *State v. Patterson*, 2017-Ohio-8970.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2017CA00022 |
| CHADWICK PATTERSON | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Case No. 2016CR1713 |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | December 11, 2017 |
| APPEARANCES: | |

For Plaintiff-Appellee

JOHN D. FERRERO,
Prosecuting Attorney,
Stark County, Ohio

By: KRISTINE W. BEARD
Assistant Prosecuting Attorney
110 Central Plaza, South – Suite 510
Canton, Ohio 44702

For Defendant-Appellant

GEORGE URBAN
116 Cleveland Avenue NW, Suite 808
Canton, Ohio 44702

*Hoffman, J.*

{¶1} Defendant-appellant Chadwick Patterson appeals the judgment entered by the Stark County Common Pleas Court convicting him of one count of rape (R.C. 2907.02(A)(1)(c) and/or (A)(2))[1] and two counts of kidnapping (R.C. 2905.01(A)(4), (B)(2)) and sentencing him to an aggregate term of imprisonment of forty-one years. Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On August 29, 2016, Appellant met K.L. at the SARTA bus stop in Canton. Although K.L. lived in a group home in Massillon, she was in Canton spending time with her boyfriend, an acquaintance of Appellant. Appellant gave K.L. a cigarette and talked with the couple.

{¶3} K.L. spent the remainder of the day at her boyfriend's mother's home. In the evening, she was waiting for a bus in front of the Save-a-Lot store on Tuscarawas Street. Appellant crossed the street to talk to her. She thought he was cute, and he told her he was going to be her boyfriend. Appellant told K.L. he knew a shortcut to the SARTA bus.

{¶4} K.L. followed Appellant into Dueber Park, formerly known as Mother Gooseland. They walked inside the blue whale, a structure left on the site from when the park was known as Mother Gooseland. Inside the whale, Appellant forced K.L. to perform

---

[1] While the court convicted Appellant of rape on Count One of the indictment in violation of R.C. 2907.02(A)(1)(c) and/or R.C. 2907.02(A)(2), and the jury was instructed on the language of both sections of the statute (Tr. 414-15), the verdict form signed by the jury on Count One presents R.C. 2907.02(A)(1)(c) as the only section of the statute on which Appellant could be convicted.

fellatio on him. When she told him she did not want to, he hit her in the back of her head. He made her get on her hands and knees, and engaged in vaginal intercourse with her. Appellant then received a telephone call and left.

{¶5} K.L. followed Appellant out of the park to Tuscarawas Street, where she flagged someone down. She told the man she had been raped, and asked him to call 911.

{¶6} While driving down Tuscarawas Street in response to the call, Sgt. Joshua Coates of the Canton Police Department was flagged down by K.L. and the man who helped her call the police. K.L. told Sgt. Coates she met a man who was showing her a shortcut to the bus stop. She stated the man forced her to perform oral sex on him, then vaginally raped her. She described the man as 5'6" tall, about 160 pounds, with a goatee. She told police the suspect wore shorts with a red or green stripe, and an ankle monitor.

{¶7} An ambulance transported K.L. to Mercy Hospital. A rape kit was performed, and the DNA profile from the vaginal swabs in the rape kit was a mixture consistent with contributions from K.L. and Appellant.

{¶8} Det. Michael Walker was assigned to investigate the case. During law enforcement roll call on August 30, 2016, Officer Amber Walters of the Adult Parole Authority was present. Because the suspect was reportedly wearing an ankle monitor, she contacted the monitoring agency and identified two individuals in the area of Mother Gooseland at approximately 8:00 p.m. on August 29, 2016. One of the individuals was a black male, and the other was Appellant. Because K.L. described her attacker as a white male, Det. Walker focused on Appellant as a possible suspect. After interviewing K.L. at the group home, Det. Walker believed her description of her attacker matched Appellant.

{¶9} Det. Walker obtained a search warrant for Appellant's residence, where he located the clothing described by K.L. Det. Guthrie administered a photo lineup, during which K.L. identified Appellant.

{¶10} Appellant was indicted by the Stark County Grand Jury with one count of rape in violation of R.C. 2907.02(A)(1)(c) and/or (A)(2), with a sexually violent predator specification and a repeat violent offender specification; one count of kidnapping in violation of R.C. 2905.01(A)(4), with a sexually violent predator specification, a repeat violent offender specification, and a sexual motivation specification; and one count of kidnapping in violation of R.C. 2905.01(B)(2) with a sexually violent predator specification, a repeat violent offender specification, and a sexual motivation specification.

{¶11} Prior to trial, Appellant filed a motion in limine to exclude evidence he was on post-release control at the time of the alleged incident. The State filed a motion to admit other acts evidence at trial, specifically the facts of a 2007 case in which Appellant was convicted of rape, attempted rape, and gross sexual imposition. After a hearing, the court granted Appellant's motion in part, holding the State could present evidence Appellant was subject to monitoring equipment at the time of the offense which led to his identification, but could not reference the specific charge. However, the court granted the State's motion as to specific evidence of other acts:

Having said that, I understand the prejudicial nature, but given the defense and given the, the issue of consent or non-consent the Court finds that there is a blueprint. The case would – major case that dealt with this type of thing was State versus McKnight, and the Court – in that case they

talk about a – basically the fingerprint that – almost that it's close to being identical when you're talking about August, 40-ish, white women, Sarta, evening, involving – happening at the location, the alleged force used in both cases, the differences being very small compared to the things that are in common as a result of which the Court is going to allow it with the limiting instruction.  Motion Tr. 13-14.

{¶12}  The case proceeded to jury trial on the charges of rape and kidnapping, with the repeat violent offender and sexually violent predator specifications tried to the court.

{¶13}  At trial, Victoria Patrick, a former SANE (sexual assault nurse examiner) nurse at Mercy Medical Center, testified on August 22, 2007, she treated a woman named S.F., a forty-seven year old white female, in the emergency room.  S.F. told Patrick she was standing at a bus stop in Massillon, and she was sexually assaulted.  Det. Bobby Grizzard, a former detective with the Massillon Police Department, testified he was assigned to investigate the assault of S.F. in 2007.  He testified Appellant initially admitted asking S.F. for sex, and then engaging in a "conflict" with her in which he struck her.  He eventually admitted the sexual assault, telling Grizzard he wanted to go to jail where he would have no worries.  The trial court gave the jury a limiting instruction to only consider the evidence of the 2007 sexual assault as it relates to the "modus operandi" of Appellant, and not to demonstrate the character of Appellant or that he acted in conformity with such character in the instant case.

{¶14}  Appellant testified at trial.  Appellant stated he met K.L. and her boyfriend, who he had known about three months, at the SARTA station.  He was unaware they

were boyfriend and girlfriend. He later ran into K.L. alone outside the Save-a-Lot. He asked if she was single, and she replied she was single. He asked her to be his girlfriend. According to Appellant, they mutually decided to "fool around" inside the blue whale at Mother Gooseland. He claimed to be unaware K.L. had any mental deficiency.

{¶15} The jury found Appellant guilty on all counts. The Court found Appellant guilty on the specifications. For purposes of sentencing, the court merged the kidnapping by force charge with the charge of rape. The court found the other kidnapping count constituted a separate act and animus, whereby Appellant moved K.L. to Mother Gooseland by deception. Appellant was sentenced to an aggregate term of imprisonment of forty-one years, and found to be a Tier III sex offender.

{¶16} Appellant prosecutes his appeal from the judgment of conviction and sentence entered by the court on February 2, 2017, assigning as error:

"I. APPELLANT'S CONVICTIONS WERE AGAINST THE SUFFICIENCY AND/OR MANIFEST WEIGHT OF THE EVIDENCE.

"II. THE TRIAL COURT ERRED BY NOT MERGING COUNT ONE WITH COUNTS TWO AND THREE FOR SENTENCING PURPOSES.

"III. THE TRIAL COURT ERRED BY PERMITTING THE STATE TO INTRODUCE EVIDENCE REGARDING THE FACTS OF APPELLANT'S PRIOR RAPE CONVICTION AND EVIDENCE REGARDING APPELLANT'S POST-RELEASE CONTROL STATUS."

III.

**{¶17}** We address Appellant's third assignment of error first, as it is dispositive of the majority of the remaining issues in his appeal.

**{¶18}** Appellant argues the court erred in admitting evidence he previously committed a sexual assault on S.F. [2] The State argues the evidence was admissible as proof of a scheme, plan, or system, as the evidence demonstrates how appellant goes about raping women.

**{¶19}** Over objection, Victoria Patrick, a former SANE (sexual assault nurse examiner) nurse at Mercy Medical Center testified on August 22, 2007, she treated a woman named S.F., a forty-seven year old white female, in the emergency room. S.F. told Patrick she was standing at a bus stop in Massillon, and she was sexually assaulted. Det. Bobby Grizzard, a former detective with the Massillon Police Department, testified he was assigned to investigate the assault of S.F. in 2007. He testified Appellant initially admitted asking S.F. for sex, and then engaging in a "conflict" with her in which he struck her. He eventually admitted the sexual assault, telling Grizzard he wanted to go to jail where he would have no worries. The trial court gave the jury a limiting instruction to only consider the evidence of the 2007 assault as it relates to the modus operandi of Appellant, and not to demonstrate the character of Appellant or that he acted in conformity with such character in the instant case.

**{¶20}** Evid. R. 404(B) provides:

---

[2] Although Appellant's assignment of error claims the court erred in admitting evidence he was wearing an ankle monitor at the time of the incident, he mentions this error in passing in his brief and has not set forth reasons in support of this contention as required by App. R. 16(A)(7). Therefore, we decline to address whether the court erred in admitting evidence of the ankle monitor.

(B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**{¶21}** R.C. 2945.59 similarly provides:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶22}** "Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." *State v. Broom*, 40 Ohio St.3d 277, 281–82, 533 N.E.2d 682, 689–90 (1988). Evidence to prove the "type" of person the defendant is in order to show he acted in

conformity therewith in the instant case is barred by Evid.R. 404(B). *State v. Greene*, 5th Dist. Tuscarawas No. 2012 AP 02 0018, 2012-Ohio-5624, 983 N.E.2d 773, ¶35.

**{¶23}** The Ohio Supreme Court has set forth a three-part test for determining the admissibility of other acts evidence:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R 403.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20 (2012).

**{¶24}** The trial court's admission of other acts evidence is reviewed under an abuse of discretion standard. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528. In order to find an abuse of discretion, we must find the trial court's decision was arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶25}** In the instant case, the trial court found the evidence was modus operandi evidence, establishing a behavioral "fingerprint" on the part of Appellant, and relevant to the issue of consent, citing *State v. McKnight*, 107 Ohio St.3d 101, 837 N.E.2d 315, 2005-Ohio-6046.[3]

**{¶26}** Generally, other acts evidence demonstrating a modus operandi, scheme, plan or system evincing a "behavioral fingerprint" is limited to the purpose of establishing the perpetrator's identity. *State v. Pruitt*, 5th Dist. Stark No. 2009 CA 00082, 2009-Ohio-6119, ¶20. The Ohio Supreme Court explained modus operandi evidence in *State v. Lowe,* 69 Ohio St. 3d 527, 531, 1994-Ohio-345, 634 N.E. 2d 616:

> A certain *modus operandi* is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator. Other-acts evidence is admissible to prove identity through the characteristics of acts rather than through a person's character. To be admissible to prove identity through a certain *modus operandi,* other-acts evidence must be related to and share common features with the crime in question.

---

[3] Neither party cites *McKnight* in their brief. The case discusses use of "behavioral fingerprint" evidence to identify the perpetrator. Id. at ¶83. Identity is not disputed in this case.

{¶27} In *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975), the Ohio Supreme Court stated there are only two situations in which other acts evidence would be admissible to show a defendant's "scheme, plan, or system":  when the evidence is offered to show (1) the background of the alleged crime, or (2) identity.  However, in *Williams, supra,* the Ohio Supreme Court determined the prior victim's testimony in a sexual assault case was relevant because it tended to show the motive Williams had and the preparation and plan he exhibited in targeting, mentoring, grooming, and abusing teenage boys.  *Williams, supra* at ¶21.  The court also determined the prior victim's testimony that Williams received "some type of sexual gratification" was relevant to show Williams's intent in cultivating his relationship with young boys was for sexual gratification. *Id.* at ¶ 22.

{¶28} The Eighth District applied *Williams* in a case involving admission of a prior delinquency adjudication in which the State argued, similar to the instant case, the other acts evidence "proved that he had a specific method of how he rapes young women." *In re C.T.*, 8th Dist. Cuyahoga No. 97278, 2013-Ohio-2458, 991 N.E.2d 1171, ¶ 23.  In distinguishing *Williams,* the Court of Appeals for the Eighth District held:

> Second, the state claims the two cases show similar modus operandi, or behavioral fingerprint, on the part of C.T., in that in both cases he found an opportunity to be alone with a young female, and forcibly engaged in oral sex and digital penetration of the girl. The state argues this shows C.T. had a specific method of raping young women, and this modus

operandi demonstrates a pattern of conduct that is excepted in Evid.R. 404(B).

In sharp contrast to *Williams,* C.T.'s conduct in both incidents hardly constituted a unique behavioral footprint. Finding an opportunity to be alone with another is a necessary part of engaging in sexual conduct, whether lawfully or not. As to the allegation of engaging in unconsented oral sex and digital penetration, this is conduct that goes to an element of the rape offense itself, not a "scheme," "plan," or "method." In addition, in *Williams,* the defendant spent an extended period of time grooming the victim for the eventual purpose of sexual gratification. Here the entire incident involving two teen-aged schoolmates occurred, seemingly spontaneously, during the time span of one evening in a jointly arranged encounter. They were acquaintances of similar age. Unlike *Williams,* there is no evidence here demonstrating a unique behavioral footprint, and therefore, the previous adjudication of delinquency is not relevant to making any fact that is of consequence to the determination of whether C.T. engaged in sexual conduct with K.W. without consent.

*Id.* at ¶32-33.

**{¶29}** In addressing the second part of the *Williams* test, the court concluded, "Essentially, the state asked the trial court to infer a lack of consent through the consideration of the prior case, where C.T. was found to engage in unconsented sexual conduct," which is exactly what the rule prohibits. *Id.* at 34. Finally the Eighth District

Court of Appeals found the prejudicial effect of the evidence outweighed its probative value, as the case was a classic "he said she said" credibility determination, and the trial court specifically stated in the finding of delinquency it considered the modus operandi in reaching its decision. *Id.* at ¶35.

{¶30} In the instant case, evidence of the 2007 assault on S.F. did not establish a unique behavioral footprint. While Appellant encountered both women in the month of August waiting at a bus stop and they were similar in age[4] and race, the similarities end there. We find more material dissimilarities between the two encounters than similarities. The case of S.F. involved Appellant physical forcing her from the bus stop in Massillon and violence between the two of them, while in the instant case the State alleged he led K.L. away from a Canton bus stop by deception. The case of S.F. was more violent than the instant case, and involved only digital penetration. The attack on S.F. occurred after dark, where the incident with K.L. occurred during daylight hours. While Appellant appears to have been a stranger to S.F., he had been previously introduced to K.L. by her boyfriend thereby establishing an obvious link to his identity. Significantly, there is no suggestion in the record S.F. was impaired due to a mental condition, as was the allegation in the instant case pursuant to R.C. 2907.02(A)(1)(c). Finally, Appellant admitted committing the sexual offense against S.F. but maintains the encounter with K.L. was consensual. We find the evidence of the assault on S.F. did not establish a plan or scheme. Nor was it necessary to establish a behavioral fingerprint of Appellant because identity was not at issue. We find the instant case far different than *Williams,* in which the

---

[4] While both S.F. and K.L. were in their 40's at the time of the incidents, Appellant was nine years older than he was at the time of the incident involving K.L.

defendant spent a substantial amount of time grooming the victim. The other acts evidence in the instant case did not make the fact at issue, i.e. consent, more or less likely.

**{¶31}** Turning to the second prong of the *Williams* test, we find the admission of the evidence invited the jury to infer a lack of consent through the fact Appellant admittedly had engaged in sexual conduct without consent in the 2007 case. Because consent was the only issue at trial, admission of evidence concerning Appellant's assault of S.F. invited the jury to conclude because the last woman Appellant met at a bus stop did not consent to sex, K.L. also did not consent to sex. Because consent was the only issue, evidence of S.F.'s lack of consent was relevant to an issue in the instant case only to demonstrate Appellant acted in conformity with his past behavior.

**{¶32}** The difficulty in separating the use of the prior incident for legitimate purpose, rather than as evidence of Appellant's propensity to act in a certain manner, is demonstrated by the State's argument in the motion hearing:

> And I know it's prejudicial, but it goes to show that, especially because he's alleging consent, that this is not in any way, shape or form a consensual encounter. That he—he's violent, that he is forceful, that he is aggressive, and that there is no mistake regarding consent versus brutality.

Motion Tr. 10-11.

**{¶33}** In this statement to the trial court, the State argued the evidence of the past assault is admissible because it shows Appellant acted in conformity with his violent,

forceful, aggressive character in the instant case.  Likewise, after hearing the evidence, the jury could easily resolve the issue of consent based on the fact Appellant in the past had sex with a woman who did not consent, which is expressly what Evid. R. 404(B) was designed to prevent.

**{¶34}** Finally, we turn to the third prong of *Williams,* whether the probative value of the evidence was outweighed by the danger of unfair prejudice.  As in *C.T., supra,* this case presented the classic "he said she said," with the case hinging on credibility.  The court gave the following instruction after the testimony of Victoria Patrick:

Ah, anything relating to an incident in 2007 is not to be considered for purposes of judging the character of this defendant or that he acted in conformity with that character on all times relevant for this case.

To the extent that testimony is, ah, offered, it's offered for limited purposes of any modus operandi on the part of this defendant, ah, and for no other purpose.

Tr. 326.

**{¶35}** The court gave a substantially similar instruction after the testimony of Det. Bobby Grizzard (Tr. 334-335).   However, we find the limiting instruction insufficient to cure the prejudicial effect.  As discussed earlier, the evidence in the instant case was not proper modus operandi evidence, as the 2007 case involving S.F. did not establish a behavioral fingerprint on the part of Appellant, and thus was of little to no probative value.

**{¶36}** Further, the danger the jury will convict the defendant solely because it assumes he or she has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment, is particularly high when the other acts are of an inflammatory nature, as is true in this case involving a prior attack on a random victim at a bus stop, and the instant allegations of an attack on a woman alleged to suffer from diminished mental capacity. See *State v. Miley*, 5th Dist. Richland Nos. 2005-CA-67 and 2006-CA-14, 2006-Ohio-4670, ¶ 58, *citing State v. Schaim,* 65 Ohio St.3d 51, 60, 1992–Ohio–31, 600 N.E.2d 661,669. In the instant case, we find the danger of unfair prejudice outweighed the probative value of the evidence.

**{¶37}** Based on the three-prong test set forth by the Ohio Supreme Court in *Williams, supra,* we find the trial court abused its discretion in admitting evidence of the 2007 sexual assault on S.F.

**{¶38}** Error in admitting other acts evidence may be deemed harmless where there is overwhelming evidence of guilt. *State v. Thomas,* Slip Opinion No. 2017-Ohio-8011, ¶39. In the instant case, there was not overwhelming evidence of guilt. The case turned solely on a determination of credibility, and there is a substantial danger the evidence of the past sexual assault on S.F. tipped the scale toward conviction.

**{¶39}** The third assignment of error is sustained.

I.

**{¶40}** In his first assignment of error, Appellant argues his convictions are against the manifest weight and sufficiency of the evidence.

**{¶41}** Based on our disposition of the third assignment of error, Appellant's conviction is reversed and the case is remanded for new trial. However, this assignment

of error is only rendered partially moot by our determination a new trial is required. The Double Jeopardy Clause does not preclude retrial of a defendant if the reversal was grounded upon a finding the conviction was against the manifest weight of the evidence; however, retrial is barred if the reversal was based upon a finding the evidence was legally insufficient to support the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387–88, 1997–Ohio–52, 678 N.E.2d 541 (1997), *citing Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Therefore, Appellant's claim the judgment is against the manifest weight is rendered moot by our conclusion a new trial is required based on the improper admission of other acts evidence. However, Appellant's claim the judgment is not supported by sufficient evidence is not moot, as if Appellant is correct the evidence is insufficient, retrial would be barred by the Double Jeopardy Clause.

{¶42} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶43} Appellant was charged with one count of rape in violation of R.C. 2907.02(A)(1)(c) and/or (A)(2):

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

**{¶44}** Appellant first argues the State failed to prove K.L. was substantially impaired because of a mental condition. He argued she lived independently at the time of trial, and had never engaged in services from MRDD. He argued she demonstrated an ability to resist as by her own testimony she told Appellant to stop, and she knew what he did to her was called "rape."

**{¶45}** Substantial impairment is established by demonstrating a present reduction, diminution or decrease in the victim's ability to either appraise the nature of his conduct or to control his conduct. *State v. Zeh*, 31 Ohio St.3d 99, 103-104, 509 N.E.2d 414. "This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report." *Id.* at 104. "'Substantial impairment' need not be proven by expert medical testimony; it may be proven by the testimony of persons who have had some interaction with the victim and by permitting the trier of fact to obtain its own assessment of the victim's ability to either appraise or control her conduct." *State v. Brady,* 8th Dist. Cuyahoga No. 87854, 2007-Ohio-1453, ¶ 78.

{¶46} Sgt. Joshua Coates testified at trial K.L. appeared to have a developmental delay; he had to go over things more than once with her. Det. Michael Walker testified he interviewed her at a group home, in front of two caseworkers. He testified she was able to answer, but he had difficulty at times getting K.L. to understand. Jennifer Carbone, the SANE nurse who examined K.L. at Mercy Medical Center, testified K.L. obviously had mental health issues and possibly some delays.

{¶47} K.L. testified she was mentally ill, and she did not know "distance" because she was mentally retarded. She testified she was not involved with MRDD, but had been diagnosed as bipolar. She testified she was on disability, and a payee center handles her bills. Further, the jury had the opportunity to view K.L. on the witness stand and determine whether she was substantially impaired. From the transcript of her testimony, it is apparent she was not always capable of following questioning and answering appropriately. For example, when asked who her caseworkers are to her, she responded, "He raped me." Tr. 238. The finding she was substantially impaired is supported by sufficient evidence.

{¶48} Appellant also argues there is insufficient evidence he had reasonable cause to believe she was substantially impaired. Jason Smith, Appellant's cellmate at the Stark County Jail, testified Appellant told him the victim was "retarded," and told him she was "like MRDD retarded." Tr. 383. This is sufficient evidence if believed by the jury to support a finding Appellant had reasonable cause to believe K.L. was substantially impaired.

{¶49} Appellant also argues the evidence was insufficient to prove he compelled her to submit by force or threat of force.

**{¶50}** K.L. testified she told Appellant she did not want to perform fellatio on him, but he made her. She testified he hit her in the back of the head, told her to pull down her pants and get on her hands and knees, and he then engaged in vaginal intercourse. He told her if she reported the incident to anyone he would hurt her. She testified she repeatedly told him to stop. From this evidence, the jury could find Appellant compelled her to submit by force or threat of force, and the judgment is supported by sufficient evidence.

**{¶51}** Appellant was convicted of two counts of kidnapping in violation of R.C. 2905.01(B)(A)(4) and (B)(2):

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will;

(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:

(2) Restrain another of the other person's liberty.

{¶52} Appellant argues K.L. willingly followed him to the blue whale in Mother Gooseland and engaged in consensual sex with him there. However, she testified Appellant flirted with her outside Save-a-Lot, and told her he knew a quicker way to a bus stop that would get her back to Massillon. She was not familiar with Canton and trusted him. Once in the park, he led her into the blue whale for the purpose of engaging in sexual activity, which she testified was against her will. From this evidence, the jury could find Appellant removed K.L. by deception to the park, for the purpose of engaging in sexual activity against her will, in violation of R.C. 2905.01(A)(4).

{¶53} Once inside the whale, K.L. testified that Appellant made her perform fellatio, and she told him to stop. She testified he hit her in the head and demanded she get on all fours, at which point he vaginally raped her. Her testimony was sufficient evidence to support the finding Appellant violated R.C. 2905.01(B)(2).

{¶54} The first assignment of error is rendered moot by our disposition of assignment of error three as to Appellant's claim the judgment is against the manifest weight of the evidence. The assignment of error is overruled as to his claim the judgment was not supported by sufficient evidence.

II.

{¶55} The second assignment of error is rendered moot by our disposition of assignment of error three.

**{¶56}** The judgment of the Stark County Common Pleas Court is reversed. This case is remanded to that court for further proceedings according to law, consistent with this opinion.

By: Hoffman, J.

Wise, Earle, J. concurs,

Delaney, P.J. dissents

*Delaney, P.J., dissenting.*

{¶57} I respectfully dissent from the majority opinion in regards to the disposition of Appellant's third assignment of error.

{¶58} I disagree with the majority's conclusion the evidence of the 2007 incident was not proper modus operandi evidence, particularly under an abuse of discretion standard. There were certainly enough similarities between the 2007 and the 2016 incident to establish a behavioral fingerprint on the part of Appellant (approaching woman standing alone at the bus stop, the similar age and race of the victims, same time of year, outdoor sexual activity). It also showed Appellant's plan or motive in obtaining sexual gratification from women he meets at bus stops, and the opportunity he finds in locating them at the bus stop and then isolating them.  Likewise, the evidence was probative of the Appellant's claim that the encounter between him and K.L. was consensual.

{¶59} Moreover, the trial court twice provided the jury with cautionary instructions on the 2007 incident. In view of these instructions and the probative value of the testimony of the 2007 incident, the trial court did not abuse its discretion in admitting this "other acts" evidence.

{¶60} I would overrule the third assignment of error and then address the remaining assignments of error in total.