[Cite as *State v. Hernandez*, 2019-Ohio-5242.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 108265 |
| v. | : | |
| NELSON HERNANDEZ, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** December 19, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-630116-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Aqueelah A. Jordan, Assistant Prosecuting Attorney, *for appellee.*

Brett M. Mancino, *for appellant.*

LARRY A. JONES, SR., J.:

{¶ 1} Defendant-appellant, Nelson Hernandez ("Hernandez"), appeals his convictions for gross sexual imposition and kidnapping with a sexual motivation specification and his 18-years-to-life prison sentence. Finding merit to the appeal, we reverse and remand for a new trial.

{¶ 2} In 2018, Hernandez was charged with two counts of rape with sexually violent predator specifications, eight counts of gross sexual imposition with sexually violent predator specifications, and two counts of kidnapping with sexual motivation and sexually violent predator specifications. The indictment lists the dates of the offenses from 2006 to 2012.

{¶ 3} Prior to trial, the state filed a notice of intent to use Evid.R. 404(B) evidence of prior acts, specifically, evidence that Hernandez had sexually assaulted a family member more than two decades prior to committing the acts that formed the basis of his current indictment. Hernandez filed a motion to exclude the evidence, and the trial court held a hearing on the matter. The trial court denied Hernandez's motion, and the matter proceeded to a jury trial.

{¶ 4} The following pertinent evidence was presented at trial.

{¶ 5} D.V. testified that she was currently 17 years old and Hernandez is her grandfather. D.V. was adopted by her parents at the age of three. D.V. testified to the following sexual assaults. When D.V. was five, D.V.'s mother gave birth to a child but experienced health complications so D.V. went to stay with her grandparents. On D.V.'s first night at her grandparents' house, while her grandmother was away, Hernandez went into D.V.'s room while D.V. was "half asleep." D.V. testified that Hernandez started touching her on her breasts and buttocks and digitally raped her. Hernandez realized D.V. was not asleep and told her that she was only dreaming. D.V. told her parents what had happened, but her parents did not believe her.

{¶ 6}  When D.V. was six years old, Hernandez took her into the computer room and sexually assaulted her by touching her vagina.  When D.V. was nine years old, Hernandez sexually assaulted her by touching her breasts and vagina.  When D.V. was ten years old, Hernandez sexually assaulted her by inserting a piece of plastic into her vagina.

{¶ 7}  At some point, D.V. testified, Hernandez told her that "something bad would happen" and "he would hurt" either her parents or her sister if she told anyone about the abuse.  D.V. testified that all the assaults occurred when D.V.'s grandmother was not home.  She further testified that Hernandez never forced D.V. to touch him.

{¶ 8}  The grandmother died in 2012, and D.V. testified that Hernandez did not sexually assault her after her death.  D.V. again disclosed the abuse, this time in 2017, to a family friend.  In January 2018, D.V. told her close cousin.  Her cousin told another family member and that family member, N.G., disclosed that she too had been sexually abused as a child by Hernandez.

{¶ 9}  N.G. testified at trial.  Hernandez married her mother shortly after they moved to the United States from Puerto Rico when she was nine years old.  N.G. testified that Hernandez sexually assaulted her from age 9 until age 17.  Hernandez forced "oral sex" on her, forcibly touching her vagina, and forced her to touch his penis until he ejaculated.  The abuse occurred when they were alone together and "every few weeks," but decreased as she got older.  N.G. told her mother about the

abuse when she was 18.  The abuse was never reported, and Hernandez was never charged in connection with the assaults against N.G.

{¶ 10}  Cleveland Police Detective Richard Durst ("Detective Durst") testified that he was assigned the investigation into the alleged sexual assaults against D.V. As part of his investigation, he interviewed N.G. Detective Durst testified that when he arrested Hernandez, he asked about N.G.  According to Detective Durst, Hernandez told the detective, "that act occurred more than 25 years ago."

{¶ 11}  The jury convicted Hernandez of six counts of gross sexual imposition with sexually violent predator specifications and one count of kidnapping with sexual motivation and sexually violent predator specifications.  Prior to sentencing, the state moved to dismiss the sexually violent predator specifications.  The court sentenced Hernandez to an aggregate sentence of 18 years to life in prison and classified him as a Tier II sex offender.

{¶ 12}  Hernandez filed a timely notice of appeal, raising five assignments of error for our review.  The first assignment of error is dispositive of this appeal.

**Assignments of Error**

> I.  The trial court denied the appellant his constitutional right to due process under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Sections 10 and 16 of the Ohio Constitution when it admitted other acts evidence from 30 years prior as to sexual acts committed by the appellant when he was thirty years old.

> II.  The trial court denied the appellant his constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article 1, Sections 10 and 16 of the

Ohio Constitution when it denied the appellant's motion for judgment of acquittal as to the kidnapping, count 4.

III. The appellant's conviction for kidnapping was against the manifest weight of the evidence.

IV. The trial court denied the appellant his constiutional right to due process under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Sections 10 and 16 of the Ohio Constitution when it did not properly instruct the jury as to the kidnapping counts because it did not instruct the jury with regard to leaving the victim in a safe place unharmed.

V. The trial court denied the appellant his constitutional right to due process under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Sections 10 and 16 of the Ohio Constitution because it did not instruct the jury that any restraint or removal needed to be significant.

**Improper Other Acts Evidence**

{¶ 13} In the first assignment of error, Hernandez claims that the trial court erred when it admitted evidence in violation of Evid.R. 404(B).

{¶ 14} The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *State v. Hart*, 2018-Ohio-3272, 118 N.E.3d 454, ¶ 28 (8th Dist.), citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43.

{¶ 15} Pursuant to Evid.R. 404(B), evidence that an accused committed a crime other than the one for which the accused is on trial is not admissible when its sole purpose it to show the accused's propensity or inclination to commit a crime, or

that the accused acted in conformity with bad character. *Hart* at ¶ 29, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 15.

{¶ **16**} R.C. 2945.59 and Evid.R. 404(B) provide exceptions that allow other acts of wrongdoing to be admitted into evidence. R.C. 2945.59 provides:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his [or her] part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his [or her] motive or intent, the absence of mistake or accident on his [or her] part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶ **17**} Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts is permitted to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident.

{¶ **18**} To determine whether other acts evidence is admissible, the court conducts a three step analysis: (1) the court considers whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence (Evid.R. 401); (2) the court considers whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B); and (3) finally, the court considers whether the probative value of the other acts evidence is substantially outweighed

by the danger of unfair prejudice. (Evid.R. 403). *Williams*, 134 Ohio St.3d 521, 2010-Ohio-5695, 983 N.E.2d 1278, at ¶ 20.

{¶ 19} In this case, the state alleged that the other acts evidence was admissible under the exceptions of (1) scheme or plan to show identity or (2) to show Hernandez's intent.

### Scheme, Plan, or System

{¶ 20} In *State v. Curry*, 43 Ohio St.2d 66, 330 N.E.2d 720 (1975), the Ohio Supreme Court explained that evidence of a defendant's "scheme, plan, or system" in doing an act is relevant in only two situations: (1) when the other acts are part of one criminal transaction such that they are inextricably related to the charged crime, or (2) when a common scheme or plan tends to prove the identity of the perpetrator. *Id.* at 72-73.

{¶ 21} At the hearing, the state argued that the other acts evidence should be admissible to show identity, arguing that "when the defendant denies a crime being committed, identity actually becomes a material issue of fact" and the evidence should be allowed "in order to establish common scheme, plan, system that support the defendant's identity[.]"

{¶ 22} Counsel for Hernandez disagreed, arguing that other acts evidence that is admissible to show identity is admissible when the identity of the perpetrator is unknown to show that the perpetrator committed a "signature crime," that is, that the perpetrator committed a previous crime in the same manner as the current crime. Defense counsel argued that, in this case, the identity of the perpetrator was

not unknown; no one was questioning the identity of who sexually abused D.V. —

Hernandez was outright denying he had committed these acts.

{¶ 23} The trial court ruled that it would allow the other acts into evidence,

stating:

> I think it is somewhat of a signature crime, given the age of the victims, the nature of the alleged sexual conduct, the relationship between the defendant and the alleged victims, as well as the manner of grooming and statements concerning consequences if one were to disclose this information.

{¶ 24} The trial court ruled the other acts evidence was admissible because

the assaults against D.V. and N.G. were "signature crimes" based on the (1) age of

the victims; (2) nature of the alleged sexual conduct; (3) familial relationship; (4)

grooming of the victims; and (5) statements he made to N.G. and D.V. to keep them

from telling anyone about the abuse.

{¶ 25} As stated above, evidence of other acts may prove the issue of identity

in two instances. The first instance, which does not apply to this case, is when the

other acts "'form part of the immediate background of the alleged act which forms

the foundation of the crime charged in the indictment,' and which are 'inextricably

related to the alleged criminal act.'" *State v. Lowe*, 69 Ohio St.3d 527, 531, 634

N.E.2d 616 (1994), quoting *Curry*, 43 Ohio St.2d at 73, 330 N.E.2d 720.

{¶ 26} The second instance is when the evidence of other acts establishes a

modus operandi, a "unique, identifiable plan of criminal activity[,]" that is

applicable to the crime with which the defendant is charged. *Lowe* at *id.*, citing *State*

*v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), syllabus. A certain modus

operandi provides a "behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator." *Lowe* at *id.* But identity is an issue only when the fact of the crime is open and evident but the perpetrator is unknown and the accused denies that he or she committed the crime. *State v. Ogletree*, 8th Dist. Cuyahoga No. 94512, 2011-Ohio-819, ¶ 36, citing *State v. Smith*, 84 Ohio App.3d 647, 666, 617 N.E.2d 1160 (2d Dist.1992). In this case, there was never an issue as to the identity of the alleged perpetrator — the victim readily identified Hernandez as her abuser.

{¶ 27} Thus, the other acts evidence was not admissible to show identity.

**Intent**

{¶ 28} The state also argues that the other acts evidence was admissible to show Hernandez's intent. We disagree.

{¶ 29} The state contends that Hernandez's intent was one of sexual gratification, and his plan was to "target young females" he was related to in order to fulfil that intent. This court has held, however, that the intent to obtain sexual gratification is inherent in the crimes of rape. *Hart*, 2018-Ohio-3272, 118 N.E.3d 454, at ¶ 39. We find the same to be true for the crime of gross sexual imposition of a child under the age of 13, R.C. 2907.05(A)(4), as charged in this case, because consent is not at issue. *Compare Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278 (finding testimony that the defendant received "some type of sexual gratification" was relevant to show that the defendant's intent was sexual

gratification. *See* R.C. 2907.01; 2907.05(A)(1)). Therefore, the state did not need any extrinsic evidence to prove Hernandez's intent to commit the crimes of rape or gross sexual imposition.[1]

**Motive, Preparation, Plan**

{¶ 30} Although not succinctly stated as such in its brief, the state appears to argue that the evidence was properly admitted to show Hernandez's motive, preparation, and plan to target young female children he was related to and sexually assault them.

{¶ 31} N.G. alleged that Hernandez sexually assaulted her more than two decades prior to sexually assaulting D.V. Although there was a familial relationship between Hernandez and the victims, there was no evidence that he "groomed" his victims, let alone that he "groomed" D.V. in a same or similar manner as he "groomed" N.G. *See Williams* at ¶ 21 (The state offered other acts evidence to demonstrate the motive, preparation, and plan of the accused to target teenage males who had no father figure and to gain their trust and confidence for the purpose of grooming them for sexual activity with the intent for the accused to be sexually gratified.); *see also United States v. Chambers*, 642 F.3d 588, 593 (7th Cir.2011) ("Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional

---

[1]The state does not argue that the other acts evidence was admissible to show Hernandez's intent to kidnap D.V. with a sexual motivation; we will not consider an argument not made.

connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity."). Although Hernandez used his relationship with D.V. to facilitate the abuse, the abuse began the first time D.V. remembered being alone with him when she went to stay with her grandparents after her little sister was born. Likewise, N.G. testified that Hernandez began abusing her soon after she moved to Cleveland. There was no evidence presented that he "groomed" either child prior to the abuse.

{¶ 32} There were also differences between the frequency and type of the sexual assaults. D.V. testified to a few separate and distinct occurrences over a five year period of sexual assault that included the forcible touching of her breasts, buttocks, and vagina; digital penetration; and penetration using a piece of plastic. N.G. testified that Hernandez sexually assaulted her "every few weeks" over an eight year period by forcing cunnilingus on her and forcing her to touch his penis until he ejaculated. Unlike N.G., D.V. testified that Hernandez never forced her to touch him.

{¶ 33} Finally, Hernandez allegedly told D.V. and N.G. not to disclose the abuse. The court stated that this was part of Hernandez's unique plan and therefore admissible as other acts evidence. On appeal, the state contends that Hernandez's efforts to prevent his victims from disclosing the abuse because of family relationship is "common" and "what we typically see through the process of grooming." We agree with the state to a point; certainly it is not rare for a perpetrator, especially one who is abusing a young family member, to warn his or

her victim about consequences of disclosing the abuse. However, as mentioned above, there was no evidence of "grooming." Thus, we conclude that Hernandez's efforts to prevent D.V. and N.G. from disclosing the abuse are neither evidence of grooming nor evidence of his "plan."

{¶ 34} Thus, while the other acts evidence may be relevant, it does not show Hernandez's preparation and plan or targeting or grooming of D.V.

{¶ 35} Next, we consider whether the other acts evidence was presented to prove the character of the accused in order to show activity in conformity therewith, or whether the other acts evidence is presented for a legitimate purpose. After a thorough review of the record, and noting the 25 year difference between when the abuse of N.G. and D.V. allegedly occurred, we find no legitimate purpose for which the evidence was admitted in this case other than to show Hernandez acted in conformity with his alleged past behavior.

{¶ 36} The final step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. The state argues that any unfair prejudice was mitigated by the limiting instruction the court gave to the jury with regard to the other acts evidence. We disagree. The other acts evidence, that being N.G.'s testimony, as well as Detective Durst's testimony that Hernandez told him that the "act" involving N.G. occurred more than 25 years ago, was of very little relevance in this case other than to demonstrate that Hernandez acted in conformity with his alleged pattern of having committed prior acts of sexual abuse.

{¶ 37} The admissibility of other acts evidence is carefully limited because of the substantial danger the jury will convict the defendant solely because it assumes the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. *See Curry*, 43 Ohio St.2d at 68, 330 N.E.2d 720. This danger is particularly high when the other acts are similar to the charged offense, or of an inflammatory nature. *Ogletree*, 8th Dist. Cuyahoga No. 94512, 2011-Ohio-819, at ¶ 39, citing *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992). "Because of the severe social stigma attached to crimes of sexual assault and child molestation, evidence of these past acts poses a higher risk, on the whole, of influencing the jury to punish the defendant for the similar act rather than the charged act." *State v. Miley*, 5th Dist. Richland No. 2005-CA-67, 2006-Ohio-4670, ¶ 59. In a case where the evidence is of a particularly inflammatory nature, a curative instruction may be insufficient to cure the prejudicial effect. *State v. Patterson*, 5th Dist. Stark No. 2017CA00022, 2017-Ohio-8970, ¶ 36-37.

{¶ 38} This case involved other acts evidence of prior acts of alleged sexual abuse against a family member, the defendant's stepdaughter, which were of limited probative value to the charged acts of sexual abuse against D.V., but highly prejudicial due to the age of the victim and the inflammatory nature of the evidence. Although the court's limiting instruction may have lessened the impact of the evidence to some extent, we find the instruction insufficient to cure the prejudicial effect.

{¶ 39} The exceptions offered by the state for admission of the other acts evidence are inapplicable to this case and no other exception applies. Accordingly, the trial court abused its discretion in allowing the other acts testimony. We therefore sustain the first assignment of error and reverse and remand for a new trial.

{¶ 40} The second through fifth assignments of error are moot based on our disposition of the first assignment of error. *See* App.R. 12(A)(1)(C).

{¶ 41} Judgment reversed; case remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

LARRY A. JONES, SR., JUDGE

PARTICIA ANN BLACKMON, P.J., and
ANITA LASTER MAYS, J., CONCUR