[Cite as *State v. Hart*, 2018-Ohio-3272.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 105673

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**DAVID HART**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-611012-A

**BEFORE:** E.T. Gallagher, P.J., Stewart, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 16, 2018

**ATTORNEYS FOR APPELLANT**

Mary Catherine Corrigan
4403 St. Clair Avenue
Cleveland, Ohio 44103

Marcus S. Sidoti
Jordan & Sidoti, L.L.P.
50 Public Square
Terminal Tower Suite 1900
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:     Oscar Albores
        Gregory Paul
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, P.J.:

{¶1} Defendant-appellant, David Hart, appeals his convictions and claims the following three errors:

1. The trial court erred by failing to grant the appellant's motion to dismiss due to preindictment delay.

2. The trial court erred by admitting evidence of prior acts as said evidence did not meet the requirements of Evid.R. 404(B).

3. The guilty verdict cannot stand as the state failed to prove the case beyond a reasonable doubt.

{¶2} We find some merit to the appeal and affirm the trial court's judgment denying Hart's motion to dismiss for preindictment delay. However, we reverse Hart's convictions and remand the case to the trial court for a new trial.

## I. Facts and Procedural History

{¶3} Hart was charged with one count of rape with a sexually violent predator specification; one count of corruption of a minor; and one count of kidnapping with sexual motivation and sexually violent predator specifications. Prior to trial, Hart filed a motion to dismiss the indictment, arguing he was prejudiced by preindictment delay. The offenses allegedly occurred in October 1998, and Hart was indicted in October 2016. The trial court denied the motion, and the case proceeded to trial.

{¶4} On the eve of trial, the state filed a notice of intent to introduce other acts evidence pursuant to Evid.R. 404(B). Hart's trial counsel sought to exclude the other acts evidence on

grounds that the evidence was inadmissible under Evid.R. 404(B) and because the notice was untimely. The trial court admitted the evidence over defense objection.

{¶5} The victim, C.H., testified at trial that on or about October 12, 1998, she and her friend T.J., who were students at Shaw High School in East Cleveland, decided to cut school. While they were walking down the street, they observed a car driven by someone whom T.J. knew but C.H. did not. They entered the vehicle, which was occupied by two men including Hart, and drove to a brick, ranch style house in "the Miles area" of Cleveland. (Tr. 290-291.) At the house, T.J., C.H., Hart, and the driver of the car went directly into a TV room in the basement where a third man was playing video games. On one side of the room, a doorway opened into a laundry room. On the other side of the room, a doorway opened into a small room that contained a weight bench and some weights.

{¶6} At first, C.H., T.J., Hart, and the driver sat on couches in the basement drinking and smoking. After awhile, T.J. and the driver went into the laundry room, and Hart began fondling C.H.'s breasts and kissing her neck in the presence of the third man, who was playing video games. (Tr. 296.) C.H. told him "no," and stood up to walk out of the house. (Tr. 299-300.) Hart blocked her exit and pushed her onto a weight bench in the weight room, where he removed her pants and held her down by the wrists while he put on a condom. C.H. alleges that Hart then vaginally raped her. (Tr. 300-303.)

{¶7} After the rape, C.H. told T.J., who was still in the laundry room, that it was time to go. The girls walked to C.H.'s sister's house in East Cleveland where she called her mother and reported what happened. C.H.'s mother took her to Huron Hospital where a rape kit was collected. C.H. spoke with the police at the hospital, and a detective later went with C.H. to the house where the rape occurred for identification purposes. However, C.H. did not hear from the

police again until the summer of 2016. (Tr. 311-312.) By that time, investigators had discovered that DNA from the rape kit matched Hart's DNA in the Combined DNA Index System ("CODIS"), a national database used to collect and store DNA profiles from convicted offenders.

{¶8} T.J. testified at trial and confirmed that she and C.H. cut school one day in October 1998 and went to an unknown man's house in the Miles area. According to T.J., C.H. was emotional when they left the house because the man she was with "possibly took it too far." (Tr. 372.) T.J. explained that C.H. "probably did not want to do what they did." (Tr. 372.) However, T.J. also stated that C.H. went with Hart into the weight room voluntarily. (Tr. 370.)

{¶9} A.P., a victim from a prior criminal case, testified over objection that she was sexually assaulted by Hart in 1996 when she was 15-years old. A.P. explained that her friend Ann, pretending to be A.P., arranged to meet Hart at Ann's house. Hart and his friend picked up Ann and A.P. and took them to a house on Cleveland's west side near Denison Avenue. They went directly into the basement of the house where A.P. soon found herself alone with Hart. (Tr. 453.) A.P. testified that Hart grabbed her breasts and tried to pull her shorts down. Hart forcibly rubbed A.P.'s vagina, but before he could rape her, A.P. escaped out of the house. (Tr. 457.)

{¶10} Detective Sonya Dziuba testified that she conducted the investigation after investigators discovered the CODIS "hit" that identified Hart as the perpetrator of C.H.'s rape. When Dziuba called Hart and told him she was investigating "an old case," he asked, "Is this about a rape?" (Tr. 572.) Dziuba informed Hart that she could neither confirm nor deny the circumstances of the old case, and Hart indicated that he did not want to talk to her. Dziuba did

not speak with Hart again until after he was arrested and she executed a search warrant to obtain a buccal swab for his DNA, which again matched the DNA in the rape kit.

{¶11} After hearing all the evidence, the jury reached an impasse in their deliberations and the court gave them a *Howard* charge. A juror failed to appear for service the following day, and the deliberations began anew. Ultimately, the jury found Hart guilty on all counts, and the court found him guilty of the sexually violent predator specifications. The kidnapping and corruption of a minor charge merged with the rape conviction, and the court sentenced Hart to ten years to life in prison on the rape conviction and sexually violent predator specification. Hart now appeals his convictions.

## II. Law and Analysis

### A. Preindictment Delay

{¶12} In the first assignment of error, Hart argues the trial court erred in denying his motion to dismiss for preindictment delay.

{¶13} The statute of limitations for a criminal offense is the defendant's primary protection against overly stale criminal charges. *U.S. v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). However, the Due Process Clause of the Fifth Amendment provides additional protection against prejudice caused by preindictment delay if preindictment delay is (1) unjustifiable and (2) causes actual prejudice. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12.

{¶14} In *Jones*, the Ohio Supreme Court established a burden-shifting framework for analyzing a due-process claim based on preindictment delay. *Id*. at ¶ 13. Under this framework, a defendant is first required to present evidence of actual prejudice, and if actual prejudice is established, the burden shifts to the state to produce evidence of a justifiable reason

for the delay. *Id*. If the defendant fails to establish actual prejudice, the court is not required to consider the reasons for the delay. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 107.

{¶15} In *Jones*, the court also set forth the appropriate standard for evaluating actual prejudice, which involves a "delicate judgment" and a "case-by-case consideration" of the particular circumstances. *Id*. at ¶ 20. In determining whether a defendant has suffered actual prejudice, "[a] court must 'consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay.'" *Id.*, quoting *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52. A claim of actual prejudice should be scrutinized "vis-à-vis the particular evidence that was lost or unavailable as a result of the delay" and "the relevance of the lost evidence and its purported effect on the defense." *Id*. at ¶ 23.

{¶16} "The '*possibility* that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice.'" *Id*. at ¶ 21, quoting *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127 at ¶ 105. (Emphasis sic.) "Those are 'the real possibilit[ies] of prejudice inherent in any extended delay,' and statutes of limitations sufficiently protect against them." *Id*., citing *Marion*, 404 U.S. at 326, 92 S.Ct. 455, 30 L.Ed.2d 468.

{¶17} "That does not mean, however, that demonstrably faded memories and actually unavailable witnesses or lost evidence cannot satisfy the actual-prejudice requirement." *Id*. The *Jones* court explained that even when a defendant does not know what the exact substance of an unavailable witness's testimony would have been, actual prejudice may still be shown where "missing evidence or unavailable testimony, identified by the defendant and relevant to the

defense, would minimize or eliminate the impact of the state's evidence and bolster the defense."

*Id*. at ¶ 28, citing *State v. Luck*, 15 Ohio St.3d 150, 157, 472 N.E.2d 1097 (1984).

**{¶18}** Thus, a defendant is not required to establish "precisely" what an unavailable witness would have testified to at trial.   *Id*. at ¶ 27.   However,

> a defendant cannot rely upon broad assertions of missing evidence or an unavailable witness to establish prejudice.   A defendant must demonstrate a viable, tangible connection between the missing evidence or the unavailable witness to the defense of the case.

*State v. Richardson*, 2016-Ohio-5843, 70 N.E.3d 1175, ¶ 13 (8th Dist.).

**{¶19}** As the Ohio Supreme Court recognized in *Jones*, the due process requirement of actual prejudice may be shown upon "the proven unavailability of specific evidence or testimony that would attack the credibility or weight of the state's evidence against a defendant, and thereby aid in establishing a defense."   *Jones* at ¶ 25.   Thus, while precision is not required, "there must be some indication in the record of what the missing evidence or unavailable witness might have offered."   *Richardson* at ¶ 13.

**{¶20}** The court in *Jones* relied on its earlier decision in *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097, to illustrate how a defendant may establish actual prejudice resulting from the unavailability of a key witness.   In that case, Luck filed a motion to dismiss murder charges against her, claiming prejudice caused by preindictment delay.   While Luck was in custody, she confessed to a detective that she and her friend, Larry Cassano, were present in the victim's apartment at the time of her death.   Luck also told the detective that Cassano "'was the only person who could have helped her in the matter but he [wa]s dead.'"   *Id*. at 157.

**{¶21}** In her motion to dismiss the indictment, Luck argued that the victim physically attacked her and that the victim was killed in the ensuing fight.   *Id*.   Luck asserted that she

would have raised self-defense as an affirmative defense at trial but for the fact that the only witness to the events was now dead. Therefore, the Ohio Supreme Court concluded that Luck was "obviously prejudiced by not being able to seek verification of her story from Cassano and thereby establish mitigating factors or a defense to the charge against her." *Id.* at 158.

{¶22} Hart claims he is prejudiced because he is unable to seek verification of his story since three of the four witnesses who were present in the home at the time of the alleged rape are now deceased. But Hart has no story. Unlike Luck, who claimed she acted in self-defense, Hart has told us nothing about the events of that day. In fact, Hart asserted in his motion for preindictment delay that "his own memory of what did or did not occur on that day in 1998 has faded due to the passage of time." (Motion to dismiss for preindictment delay at 4.) But, as previously stated, faded memories are not sufficient to establish actual prejudice. *Jones* at ¶ 21.

{¶23} Hart also asserts that had the case been prosecuted sooner, three of the four witnesses would still have been alive and "could have provided relevant testimony concerning what did or did not occur on the day in question. Because the police failed to pursue the investigation, that relevant testimony is lost." Hart claims the driver of the car and the third individual in the basement, who was playing video games, observed Hart and the victim and "could show that the interactions between the victim and the defendant did not amount to the actions that gave rise to the indictment." (Motion to dismiss for preindictment delay at 5.)

{¶24} Hart also asserts that his grandmother, who owned the home where the alleged rape occurred, spoke with the victim on the day of the incident and therefore "could shed further light onto the nature of the interaction between the defendant and the victim that day and other information that *might* exculpate the defendant." (Motion to dismiss for preindictment delay at 5, emphasis added.)

**{¶25}** Finally, Hart contends he was prejudiced by the unavailability of Detective Nathaniel Pursley, who was subpoenaed for trial but failed to appear. Detective Pursley was one of the original investigators in this case in 1998. But Hart tells us nothing about how the testimony of these missing witnesses would have minimized or eliminated the impact of the state's evidence and bolstered the defense. *See Jones* at ¶ 28. Whether they would have assisted the defense or aided the prosecution is entirely unknown. Thus, Hart cannot demonstrate that the testimony of these unavailable witnesses "would minimize or eliminate the impact of the state's evidence and bolster his defense." *State v. Jones*, 8th Dist. Cuyahoga No. 101258, 2017-Ohio-176, ¶ 8. He therefore cannot establish actual prejudice.

**{¶26}** Accordingly, the first assignment of error is overruled.

### B. Other Acts Evidence

**{¶27}** In the second assignment of error, Hart argues the trial court erred by admitting "other acts" into evidence in violation of Evid.R. 404(B). Hart contends the court erred in allowing the state to present evidence regarding Hart's prior attempted corruption of a minor conviction.

**{¶28}** The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43.

**{¶29}** "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose it to show the accused's propensity or inclination to commit crime, or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio

St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 15. However, there are exceptions that allow

other acts of wrongdoing to be admitted into evidence.

**{¶30}** First, R.C. 2945.59 provides that:

[i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

Evid.R. 404(B) also provides that evidence of other crimes, wrongs, or acts is permitted to show

proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of

mistake or accident.

**{¶31}** In *Williams*, the Ohio Supreme Court set forth the following three-step analysis for

determining whether other acts evidence is admissible:

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401.

The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B).

The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R. 403.

*Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278 at ¶ 20.

**{¶32}** A.P., the victim from Hart's prior criminal case, testified that Hart sexually

assaulted her. Hart was convicted of attempted corruption of a minor as a result of that assault.

Hart argues that evidence of this prior conviction was offered for the sole purpose of proving

Hart's propensity for sexual violence and to show that he acted in conformity therewith when he allegedly raped C.H. The state argues the evidence demonstrated Hart's motive, intent, preparation, and plan to target vulnerable teenage girls with intent to be sexually gratified.

{¶33} Although the Ohio Supreme Court's decision in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, is not directly on point, it is instructive. In that case, Williams was charged with multiple counts of rape, kidnapping, and unlawful sexual conduct with a minor after he allegedly molested a 14-year old boy. Williams had become the child's mentor in his local church and groomed him for a period of time before the sexual assaults began. Prior to impaneling the jury, the state moved to admit evidence that Williams had had a similar relationship with a 16-year-old member of the high school swim team Williams had coached. In support of its motion, the state argued that Williams's relationship with the swimmer paralleled the relationship he had with his mentee. According to the state, both relationships "indicated a course of conduct constituting a common plan, demonstrated a distinct pattern of sexual conduct constituting modus operandi, and by reasonable inference, tended to prove Williams's intent to achieve sexual gratification with teenage males." *Id.* at ¶ 5.

{¶34} The trial court in *Williams* allowed the evidence to be admitted, but gave a cautionary instruction before the evidence was presented. *Id*. at ¶ 8. The trial court reiterated this instruction prior to deliberations, and the jury found Williams guilty.

{¶35} Williams appealed his convictions, arguing the trial court erred in admitting evidence of his prior criminal acts with another teenage boy. After conducting the three-step analysis described above, the Ohio Supreme Court determined that the evidence was admissible. First, the court found that the swimmer's testimony was relevant because it tended "to show the motive Williams had and the preparation and plan he exhibited of targeting, mentoring,

grooming, and abusing teenage boys." The court noted that the swimmer's testimony also rebutted the suggestion offered by the defense during opening statements that the victim had falsely accused Williams of abuse with the hope of getting out of trouble at school. The court also found the swimmer's testimony that "Williams received 'some type of sexual gratification'" was relevant to show Williams's intent to receive sexual gratification. *Id*. at ¶ 22. Therefore, with respect to the first step of the analysis, the court determined that the swimmer's testimony was relevant.

{¶36} The *Williams* court also determined, in the second step of the analysis, that the state did not offer the testimony to prove that Williams's conduct was in conformity with his bad character. In making this conclusion, the *Williams* court found that the swimmer's testimony demonstrated Williams's plan and preparation to target teenage males, who had no father figure, in order to gain their trust and confidence for the purpose of grooming them for sexual activity. *Id*. at ¶ 21.

{¶37} Finally, the court determined, in the third step of the analysis, that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The court reasoned that the limiting instructions "lessened the prejudicial effect" of the swimmer's testimony and corroborated the victim's testimony, which had been disputed by Williams. Moreover, the court concluded that the swimmer's testimony was probative because "it helped prove motive, preparation, and plan on the part of Williams."

{¶38} The defendant in *Williams* took time and planning to groom his victims. Hart could not have planned on raping C.H. in advance because he did not know he was going to have the opportunity for sex until he and his friend happened to pick up C.H. and T.J., who were supposed to be in school. Although Hart's prior case with A.P. demonstrates possible prior

planning because he prearranged the meeting by phone, there is no evidence that Hart prearranged his encounter with C.H. Therefore, any evidence of prior planning and scheming in A.P.'s case was irrelevant since there was no evidence of prior planning or scheming in this case. The opportunity for rape arose spontaneously, and Hart simply took advantage of it.

{¶39} Furthermore, Hart's motive and intent to obtain sexual gratification is inherent in any rape case. Therefore, the state did not need any extrinsic evidence to prove Hart's motive or intent. And since there is nothing unique or unusual about Hart's criminal conduct, there was no evidence of a modus operandi.

{¶40} Hart's assault of A.P. is strikingly similar to his assault on C.H. Both victims were 15-year-old girls. Hart and a friend picked up each of the victims, purchased alcohol and offered it to the teens before arriving at a house where Hart directed his victims to the basement where he assaulted them. He even restrained both victims in the same manner, by holding their wrists. But these similarities can be viewed as nothing more than a propensity for corrupting and raping minors, and Hart's conduct in conformity with that character.

{¶41} As previously stated, the third step of the *Williams* analysis requires the court to consider whether the probative value of the prior criminal acts is substantially outweighed by the danger of unfair prejudice. As in *Williams*, the trial court gave a limiting instruction prior to deliberations to lessen the prejudice caused by the prior bad acts evidence. Although we may presume that the jury followed this instruction, the similarities between this case and Hart's prior criminal conduct is hard to ignore, and the prior case offers nothing probative. Moreover, the risk of unfair prejudice resulting from the wrongful inclusion of other acts evidence "is 'particularly high when the other acts are very similar to the charged offense or of an inflammatory nature.'" *State v. Sargent*, 2015-Ohio-704, 29 N.E.3d 331, ¶ 31 (6th Dist.),

quoting *State v. Miley*, 5th Dist. Richland Nos. 2005-CA-67 and 2006-CA-14, 2006-Ohio-4670, ¶ 58.

**{¶42}** The only evidence of the rape in this case came from the victim. Hart argued the rape was consensual. Although T.J. testified that C.H. was upset following her encounter with Hart in the weight room, T.J. testified that C.H. went with Hart into the weight room "willingly." (Tr. 370.) Therefore, the jury's determination was necessarily based on the victim's credibility vis-a-vis the defendant's version of the facts. In a "he said/she said" case, where credibility is paramount, we cannot say that the erroneous admission of other acts evidence was harmless.

**{¶43}** Therefore, the second assignment of error is sustained.

**{¶44}** We affirm the trial court's judgment denying Hart's motion to dismiss. Having sustained the second assignment of error, the third assignment of error, which challenges the manifest weight of the evidence, is moot. The trial court's judgment of conviction is reversed, and the case is remanded to the trial court for a new trial.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, PRESIDING JUDGE

MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY;

SEAN C. GALLAGHER, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

SEAN C. GALLAGHER, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶45} I concur with the lead opinion to reverse the conviction for a new trial based on the erroneously admitted other acts evidence, but I write separately to clarify the analysis. I also dissent from the lead opinion's rationale for rejecting Hart's preindictment-delay challenge.

{¶46} Hart demonstrated actual prejudice under *State v. Jones*,148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 28, in that a witness who was present during the events underlying the criminal conduct has died and Hart is unable to seek verification of his story from two other deceased witnesses who were present around the time of the events but were not necessarily present for any of the alleged criminal conduct. *Id.* It is irrelevant that Hart is unable to articulate specifically what the testimony would have been. *Id.*

{¶47} "Courts apply a two-part test to determine whether preindictment delay constitutes a due process violation. The defendant has the initial burden to show that he was substantially and actually prejudiced due to the delay." *State v. Dixon*, 2015-Ohio-3144, 40 N.E.3d 601, ¶ 19 (8th Dist.), citing *State v. Whiting*, 84 Ohio St.3d 215, 217, 1998-Ohio-575, 702 N.E.2d 1199. If a defendant can show actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *Id.*, citing *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 51, and *Whiting* at 217.

{¶48} In this case, the trial court did not resolve the second part of the inquiry; Hart's motion was denied after the state provided an argument to support its burden to produce evidence of a justifiable reason for delay but before Hart had an opportunity to respond. By implication, the trial court could only have considered the first prong of the preindictment-delay inquiry.

**{¶49}** In this case, the police report indicated that the victim spoke with Hart's grandmother, who was erroneously referred to as someone else, on the day of the incident. *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 28 (defendant may establish actual prejudice where he is unable to seek verification of his story from deceased witnesses present during the alleged crimes). Hart also identified two other individuals by name that were allegedly present in the car and in the basement who are also no longer available to testify. *Id.*

**{¶50}** Importantly, one of those individuals was in a position to witness the alleged sexual assault, which had occurred on the couch in the common area of the basement according to the victim's testimony. The victim claimed that after she and the others had smoked marijuana for a bit, her friend and another guy went to a separate room. It was then, while she and Hart were on the couch with another male who continued to play video games and who was later identified by Hart as being deceased at the time of trial, that Hart started forcefully fondling and kissing her, despite the victim's panicked protestations. The victim stood up and began walking toward the exit, but she was blocked by Hart who then forced her into the weight room. Importantly, the victim claimed her friend had left the room by that time, so the deceased witness was the only person other than the victim and Hart to have observed the events as they unfolded.

**{¶51}** According to the victim's friend, after the group sat around for a bit, the victim voluntarily went into the separate room with Hart and the friend did not observe any of the events as described by the victim.

**{¶52}** Thus, and contrary to the lead opinion's conclusion that Hart did not have a story or version of events, Hart is not relying on broad assertions of missing evidence to establish prejudice — he presented a tangible connection between the deceased witness and his defense. The deceased witness was present when the victim claimed to have been sexually assaulted.

Moreover, the lead opinion recognizes that Hart's story was essential to the conviction: "the jury's determination was necessarily based on the victim's credibility vis-a-vis the defendant's version of the facts." Lead opinion at ¶ 43. Because the victim's credibility was essential to the state's case, it cannot be concluded that the defendant failed to demonstrate actual prejudice under the first prong of the preindictment-delay analysis. At the least, Hart is unable to seek verification of his version of events or seek to impugn the victim's credibility with the testimony of the only other person present during the initial stages of the alleged sexual assault.

{¶53} The state's only argument against the demonstrated, actual prejudice is that Hart is unable to specifically indicate to what, if anything, the unavailable witnesses would testify, and therefore, Hart's claims of prejudice are speculative. The Ohio Supreme Court has rejected this all-or-nothing approach. *Jones* 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 27-28; *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984) (although there is no record demonstrating the content of the missing witness's testimony, the defendant can demonstrate actual prejudice based on the inability to verify his story or establish mitigating factors). A defendant does not need to articulate specifically what the unavailable witness would have said. The lack of specificity does not render the claim of prejudice fatally speculative. *Jones* at ¶ 27. The lead opinion disagrees, concluding that Hart's inability to articulate what the deceased witnesses' testimony would have been renders his claim for actual prejudice to be speculative because Hart cannot demonstrate that the testimony of the deceased witnesses would have minimized or eliminated the impact of the state's evidence. As the Ohio Supreme Court has rejected this rationale, so should we.

{¶54} Although I previously took the approach that a bright-line rule requiring a defendant claiming prejudice to show exactly what a missing witness would have said was the

best approach, as noted, that view was rejected by the Supreme Court in *Jones*. Because of the Supreme Court's holding in *Jones*, I would hold that the trial court erred in denying Hart's motion for preindictment delay without considering the second part of the inquiry. *Jones* at ¶ 18 (courts must consider the second prong of the inquiry once the defendant demonstrates actual prejudice). The matter should be remanded for the trial court to consider the entirety of the preindictment-delay analysis.

{¶55} With respect to the issues relating to the evidence admitted under Evid.R. 404(B), although I agree with the outcome, a small clarification is necessary. All too often the state presents Evid.R. 404(B) as if the jury must determine the state's intended reason for introducing the other acts evidence. For example, most juries are instructed, as they were in this case, that

> [e]vidence was received about the commission of other acts than the offenses with which the defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conforming or in accordance with that character.

> If you find that evidence of other acts is true and that the defendant committed them, you may consider that evidence only for the purposes of deciding whether it proves, A, the absence of mistake or accident, or B, the defendant's motive, opportunity, intent, or purpose, preparation or plan to commit the offense charged in this trial, or C, knowledge of circumstances surrounding the offense charged in this trial, or D, the identity of the person who committed the offense in this trial. That evidence cannot be considered for any other purpose.

{¶56} Evid.R. 404(B) provides a nonexhaustive list of alternatives for admitting other acts evidence. Not all factors are relevant in every case such that the above instruction is always appropriate. The proponent of the evidence must demonstrate the applicability of one or more of the exceptions. It is not enough to simply cite them all and let the jury figure out which one applies.

**{¶57}** The lead opinion thoroughly analyzes the issue under *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278. The state, however, is not contending that this is a "grooming" case, one in which the defendant systematically takes steps to expose a child to sexual material with the goal of reducing the child's inhibitions to prepare the child for sexual activity. *Id.* at ¶ 21. The state claimed that the other acts evidence demonstrated a scheme, a pattern, or modus operandi because both girls were plied with alcohol and then sexually assaulted. *Williams* has no relevance to the Evid.R. 404(B) discussion in this case other than setting forth the black-letter framework.

**{¶58}** The starting point of the analysis should always be the stated reason upon which the trial court admitted the evidence, or if the record is silent as to the trial court's reasoning, the proponent's stated reason for seeking to admit the evidence. According to the trial court, in this case, the other acts evidence was admitted for the express purpose to demonstrate Hart's motive or intent "to take advantage of young girls when the situation presents itself."

**{¶59}** Taking advantage of a victim whenever the opportunity arises is the quintessential propensity evidence prohibited under Evid.R. 404(B). The trial court permitted the evidence for the purpose of demonstrating that if Hart has the opportunity to sexually assault a teenaged girl, he will. I would hold that the trial court abused its discretion in admitting the evidence under its stated rationale. According to the trial court, there was no alternative purpose for the admission of the character evidence; it simply proved Hart's propensity to act in conformity therewith.

**{¶60}** The state concedes the point through its silence. On appeal, the state seeks to affirm the evidentiary judgment on a ground other than relied on by the trial court. The state contends that the other acts evidence of the prior sexual assault was probative of a common plan or scheme. According to the state, the evidence admitted under Evid.R. 404(B) in this case

"clearly demonstrated the defendant's intent and scheme in obtaining sexual gratification by isolating two 15 yr [sic] olds in an unknown residence while attempting to get them drunk," and the pattern of conduct is similar between both crimes in that Hart sexually assaulted the victims by first isolating them from their friends.

{¶61} There is no evidence to support such a claim. As the lead opinion concluded, Hart's intent, sexual gratification, is inherent to the sexual misconduct in this particular case. The state did not need extrinsic evidence of another sexual assault in order to demonstrate Hart's intent.

{¶62} The state's second potential use of the prior bad acts evidence, common scheme, or plan, is not borne out from the evidence either. The other acts evidence of driving the teenaged victim to a house she was unfamiliar with and engaging in similar sexual misconduct is not probative evidence of a common plan or scheme. In *In re C.T.*, 2013-Ohio-2458, 991 N.E.2d 1171, ¶ 33 (8th Dist.), it was concluded that manufacturing an opportunity to be alone with a young female to commit acts of sexual misconduct was not the type of plan or scheme envisioned by the drafters of Evid.R. 404(B). *Id.* at ¶ 33. In that case, the offender was accused of forcing the victim to perform oral sex on him and digitally penetrating her after the defendant drove the victim to a secluded area. *Id.* at ¶ 20. At trial under cross-examination, the offender stated that he had previously been convicted of the same type of sexual misdeeds with another victim after likewise taking the victim to a secluded area to facilitate the crime. *Id.* at ¶ 21. According to the state, in that case, the similarities between the sexual misconduct and the similar methods of isolating the victim demonstrated a common plan or scheme for the purposes of Evid.R. 404(B).

{¶63} That reasoning was rejected. *Id.* It was concluded that similarities between the charged crimes and the prior bad acts are insufficient to demonstrate a common scheme or plan.

*Id.* at ¶ 33. Finding an opportunity to be alone with another is a necessary part of engaging in sexual misconduct, and the similarities with respect to the sexual misconduct address the elements of the sexual assault crimes, not a common plan or scheme. *Id.* This is not to suggest that the similarities would be entirely irrelevant in all cases. For instance, the similarities in committing the crimes could be probative of a behavioral footprint for the purposes of establishing identity or intent. *State v. Wilson*, 2016-Ohio-2718, 51 N.E.3d 676, ¶ 50 (8th Dist.). As already noted, identity was not an issue at trial because the state established identity with the undisputed DNA evidence and the intent to obtain sexual gratification is inherent in the rape crime itself.

**{¶64}** With that clarification, I agree with the lead opinion that the other acts evidence of Hart's earlier conviction was inadmissible under Evid.R. 404(B).

**{¶65}** Nevertheless, I dissent from the lead opinion's conclusion — that the existence of a deceased witness, who was present during the acts underlying the criminal conduct, does not constitute actual prejudice because the defendant is unable to articulate specifically what that witness's testimony would have been. The Ohio Supreme Court has unambiguously rejected the lead opinion's stated rationale. I would find that Hart has demonstrated actual prejudice from his inability to call the only other person present during the events to which the victim testified, and remand for the trial court to consider the remaining aspects of the preindictment-delay analysis.