[Cite as *State v. Cruz*, 2019-Ohio-792.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 107174

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**JESUS M. CRUZ**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-611875-A

**BEFORE:** Sheehan, J., Boyle, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 7, 2019

**ATTORNEY FOR APPELLANT**

Erin R. Flanagan
Erin R. Flanagan, Esq., Ltd.
1220 West Sixth Street, Suite 203
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Oscar Albores
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113


MICHELLE J. SHEEHAN, J.:

{¶1} Jesus Cruz appeals from a judgment of the trial court convicting him of rape, aggravated burglary, attempted rape, and sexual battery after he pleaded guilty to these offenses. On appeal, Cruz argues the trial court erred in denying his motion to dismiss based on preindictment delay.

{¶2} Cruz pleaded guilty and therefore waived his claim of preindictment delay.   Even if he had not waived the issue as a result of his guilty plea, he has failed to demonstrate actual prejudice required for his claim to prevail.   Consequently, we affirm his convictions.

**Procedural History**

{¶3}   The grand jury indicted Cruz in 2016 for 14 counts of sexual offenses involving four different females in four incidents between 1997 and 2004.   The four incidents occurred in

March 1997 (Jane Doe 1), May 1997 (Jane Doe 2, a minor), May 2000 (Jane Doe 3), and July 2004 (Jane Doe 4). Prior to trial, Cruz filed a motion to dismiss the case, claiming he was prejudiced by the state's delay in the indictment. The trial court held a hearing on the motion to dismiss and subsequently issued a decision denying it.

{¶4} Thereafter, under a plea agreement, Cruz pleaded guilty to rape and aggravated burglary for the incident relating to Jane Doe 1, rape relating to Jane Doe 2, attempted rape relating to Jane Doe 3, and sexual battery relating to Jane Doe 4. He received a sentence of 20 years for these convictions.

{¶5} On appeal, Cruz raises a single assignment of error:

1. The trial court erred when it denied Appellant's pretrial motion to dismiss for reasons of pre-indictment delay.

## Cruz's Guilty Plea Waived His Claim of Preindictment Delay

{¶6} In claiming he was prejudiced by preindictment delay, Cruz disregards the fact that he had pleaded guilty to the offenses. By pleading guilty, a criminal defendant waives all constitutional violations not related to the entry of the guilty plea. *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 105. *See also State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph two of the syllabus (a plea of guilty effectively waives all appealable errors at trial unrelated to the entry of the plea).

{¶7} By pleading guilty, therefore, Cruz waived any alleged due process violation arising from preindictment delay. *State v. Shivers*, 8th Dist. Cuyahoga No. 105621, 2018-Ohio-99, ¶ 11, citing *State v. Taylor*, 8th Dist. Cuyahoga No. 105322, 2017-Ohio-8066, ¶ 12, *discretionary appeal not allowed*, 152 Ohio St.3d 1440, 2018-Ohio-1600, 96 N.E.3d 297, and *State v. Brown*, 8th Dist. Cuyahoga No. 104095, 2017-Ohio-184, ¶ 9. *See also State v.*

*Thompson*, 8th Dist. Cuyahoga No. 104322, 2016-Ohio-8310, ¶ 3-4; *State v. Ware*, 11th Dist. Lake No. 2007-L-154, 2008-Ohio-3992, ¶ 10.

{¶8} Even if Cruz had not waived his claim of preindictment delay as a result of his guilty plea, our review shows he fails to demonstrate he was actually prejudiced by the delayed prosecution in this case.

**Preindictment Delay**

{¶9} In *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), the United States Supreme Court considered whether a delay between the commission of an offense and the initiation of prosecution deprived a criminal defendant of due process. The court stated:

> [P]rosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. To impose such a duty "would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself," *United States v. Ewell*, [383 U.S. 116, 120, 86 S.Ct. 733, 15 L.Ed.2d 627 (1966)]. From the perspective of potential defendants, requiring prosecutions to commence when probable cause is established is undesirable because it would increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried.

*Id*. at 791.

{¶10} To protect a defendant against prejudice resulting from the passage of time between crime and charge, the law provides the statute of limitations for an offense, which is the primary guarantee against bringing overly stale criminal charges. *U.S. v. Marion*, 404 U.S. 307,

322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Additional protection against prejudice caused by preindictment delay is provided by the Due Process Clause of the Fifth Amendment. *State v. Hart*, 8th Dist. Cuyahoga No. 105673, 2018-Ohio-3272, ¶ 13. Preindictment delay violates due process, however, only when it causes actual prejudice and is unjustifiable. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12. Furthermore, it has been settled that the court uses a burden-shifting framework to analyze a due process claim based on preindictment delay: once a defendant establishes actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *Id.*

**Actual Prejudice**

{¶11} In analyzing actual prejudice, the court will scrutinize the defendant's claim of prejudice "vis-à-vis the particular evidence that was lost or unavailable as a result of the delay and, in particular, consider[] the relevance of the lost evidence and its purported effect on the defense." *Id.* at ¶ 23.

{¶12} Furthermore, the defendant's claim that there is a possibility that memories will fade, witnesses will become inaccessible, or some evidence will be lost is not sufficient to establish actual prejudice, because those possibilities are inherent in any extended delay, and a defendant is protected by the statutes of limitations against them. *Id.* at ¶ 21. However, "demonstrably faded memories" and "actually unavailable witness or lost evidence" may show actual prejudice. *Id.*

{¶13} In *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, the defendant claimed an unavailable witness would provide exculpatory testimony but was unable to articulate exactly what the testimony would be. The *Jones* court explained that this does not render the defendant's claim of prejudice fatally speculative. In determining actual prejudice, the court

considers the unavailable evidence in light of the other evidence available at the time of the indictment and in light of its relevance to the defense. *Jones* at ¶ 26. A defendant is not required to know exactly what the witness would testify to — actual prejudice can still be shown when unavailable testimony identified by the defendant and relevant to the defense would "minimize or eliminate the impact of the state's evidence and bolster the defense." *Id.* at ¶ 28. However, a defendant must demonstrate a "viable, tangible connection between the missing evidence or the unavailable witness to the defense of the case." *State v. Richardson*, 2016-Ohio-5843, 70 N.E.3d 1175, ¶ 13 (8th Dist.). A defendant must identify the exculpatory evidence that was lost and "show that the exculpatory evidence could not be obtained by other means." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 103.

{¶14} In *State v. Owens*, 8th Dist. Cuyahoga No. 102276, 2015-Ohio-3881, ¶ 5, this court explained a high bar is set to proving prejudice caused by preindictment delay because the statute of limitations (in effect at the time) unquestionably gives the state 20 years — in rape cases — to commence a prosecution. Therefore, "[t]he law requires a defendant to do more than offer mere speculation as to how he was prejudiced by any delay because requiring less would undermine the statute of limitations." *Id.* The statute of limitations for rape is 20 years regardless of whether the identity of the alleged offender was known or should have been known upon investigation of the incident. R.C. 2901.13(A)(3)(a). "Whether the statute of limitations should be changed with regard to known offenders is a matter for the legislature to consider." *State v. Shivers*, 8th Dist. Cuyahoga No. 105621, 2018-Ohio-99, ¶ 13.

{¶15} For our review of a trial court's decision on a motion to dismiss for preindictment delay, we apply a de novo standard of review to the legal issues but afford great deference to

findings of fact made by the trial judge. *State v. Tate*, 2016-Ohio-5622, 70 N.E.3d 1056, ¶ 18 (8th Dist.).

**Cruz Fails to Demonstrate Actual Prejudice**

{¶16} Cruz's indictment was a result of the initiative of the Cleveland Police Department in 2011 to forward its backlog of rape kits to the Ohio Bureau of Criminal Investigation ("BCI") for DNA testing. In January 2013, Cruz's DNA was submitted to BCI and subsequently his DNA was matched to three rape kits (Jane Does 1, 2, and 4) involved in this case. Although in three of the four incidents (Jane Does 1, 3, and 4) Cruz's identity was known to the police at the time, the DNA matching renewed the police investigations in these cases.

**1. Case #1 (March 1, 1997 — Jane Doe 1)**

{¶17} The state alleged that at 5:00 a.m. in the morning, while Jane Doe 1 was returning to her apartment, Cruz approached her from behind and forced her into her apartment. Once inside, he choked her, removed her clothing, and raped her for almost three and one-half hours. After he left, Jane Doe 1 went to the police and filed a report. A rape kit was collected, and the treating physician at the hospital observed visible injuries on her neck, jaw, and shoulder.

{¶18} Det. Sherylyn Howard, the lead detective in this case in 1997, wrote on her report that, after speaking with Jane Doe 1, Cruz, and some witnesses, "[w]e learned that the victim was smoking crack with the suspect and he had paid her to have sex with him. Victim asked this detective if she would be getting money. Victim has a history of drug abuse and mental problems." Det. Howard wrote in her report that an assistant prosecutor ruled that "no papers issued." Det. Howard also noted that a C.M.H.A. security guard stated that "he saw the male

leaving at 5:05 a.m." and "had heard nothing." Another guard stated that Jane Doe 1 was a crack user.[1]

{¶19} In 2014, Cruz's DNA profile was found to be consistent with the DNA profile found in Jane Doe 1's vaginal and rectal swab. When Jane Doe 1 was interviewed after the DNA match, she remembered the incident well and cooperated in the prosecution.

{¶20} As Cruz had admitted to having sexual conduct with Jane Doe 1, the only issue for trial is whether the sexual conduct was consensual. Cruz claims he was prejudiced by the unavailability of Det. Howard and the two C.M.H.A. guards.

{¶21} Regarding Det. Howard, her testimony would presumably reflect what she stated in her report. The potentially exculpatory information contained in the report, such as the decision not to continue prosecution or the victim's request for money, could, however, be obtained from cross-examination of either the officer offered by the state as a witness at trial or possibly the victim. The only issue in this case was consent. Both the victim and the defendant are available to testify to their account of the incident. Thus, Cruz fails to demonstrate the unavailability of Det. Howard actually prejudiced him.[2]

{¶22} Regarding the two C.M.H.A. guards, Cruz claims they could testify regarding Jane Doe 1's crack use and the lack of noise around the time of the incident. There is simply no viable, tangible connection between that testimony and Cruz's defense of consensual sex. Cruz

---

[1]Det. Howard's report is not part of the record. In Cruz's motion to dismiss for preindictment delay, he quoted certain statements from the report and the statements appear undisputed.

[2]There is also a question of whether Det. Howard was indeed unavailable. Cruz contends his counsel was informed during discovery that Det. Howard was deceased. However, at the hearing on the motion to dismiss, the state informed the court that Det. Sherilyn Howard was mistaken for Det. Esse Howard, and Det. Sherilyn Howard is actually alive and lives in Atlanta and "technically"available as a witness. The record does not reflect any attempts were made by the defense to subpoena her.

also claims the guards could testify about his departure from the Jane Doe 1's apartment at 5:05 a.m. Although this testimony would contradict Jane Doe 1's testimony that Cruz forced his way into the apartment around 5:00 a.m. and raped her for the next three and one-half hours, his departure time at 5:05 a.m. would seem at odds with his own claim that he paid Jane Doe 1 for sex, given that he only entered her apartment at 5:00 a.m. The purported effect of the testimony from the two unavailable security guards is tenuous and does not "minimize or eliminate the impact" of the state's evidence to constitute actual prejudice.

**2. Case #2 (May 29, 1997 — Jane Doe 2)**

{¶23} On the day of the incident, Jane Doe 2, age 12, skipped school and spent half the day drinking with Cruz and a man by the name of "Junior." After the drinking, she left with Cruz to go to a house and, while there, Cruz expressed his interest in having sex with her. When she rebuffed his advances, Cruz threw her to the ground and threatened to call "his boys" to gang rape her. He punched her in the face, removed her clothing, and raped her vaginally. When he was finished, he allegedly threatened to kill her and her family if she reported the incident.

{¶24} Despite the threat, Jane Doe 2 told her family who took her to a hospital where a rape kit was collected. Jane Doe 2 could not identify either Cruz or "Junior." The investigation went cold after she ceased to cooperate with the police. Unlike the incident involving Jane Doe 1, with whom Cruz had admitted to having sexual conduct but claimed it was consensual, the identity of the alleged perpetrator against Jane Doe 2 *was* unknown at the time of the initial investigation. On March 3, 2014, Cruz's DNA was matched to Jane Doe 2's rape kit. The state resumed its investigation and interviewed Jane Doe 2, who was now cooperating with the investigation.

{¶25} Without specificity, Cruz claims he was prejudiced by the unavailability of "Junior" as a witness. Although Cruz is not required to establish precisely what that testimony would be, he cannot rely on broad assertions of an unavailable witness to establish prejudice. *Hart*, 8th Dist. Cuyahoga No. 105673, 2018-Ohio-3272, at ¶ 18.

{¶26} Cruz claims this case is analogous to *State v. Kafantaris*, 2018-Ohio-1397, 110 N.E.3d 793 (8th Dist.), where this court affirmed the trial court's judgment granting the defendant's motion to dismiss on the basis of preindictment delay. In that case, this court found the lost case file and the unavailable phone records that could potentially contradict the victim's statements would create actual prejudice. As the Supreme Court of Ohio cautioned, the determination of actual prejudice involves a delicate judgment based on the particular circumstances of each case. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52. Our review of *Kafantaris* does not indicate this case to be factually analogous and warranting a similar outcome. **3. Case #3 (May 3, 2003 — Jane Doe 3)**

{¶27} The state alleged that Cruz and Jane Doe 3 went to Edgewater Park around 10:30 p.m. after drinking at a bar. While at the park, he pushed Jane Doe 3 down and removed her underwear, attempting to penetrate her. She tried to scream for help but Cruz threatened to bash her head on the rocks.

{¶28} Officer Schaefer, who was patrolling the park, saw "two figures on the rocks engaged in an embrace." He got out of his cruiser and shined his lights on the two individuals. Jane Doe 3, her pants down by her ankles, was crying. She told the officer that Cruz was trying to rape her. She was transported to the hospital but left before a rape kit was collected. She never went to the police to press charges as instructed by the officers. Cruz told the two officers at the scene that the sexual conduct between the two was consensual.

{¶29} Officer Eskine, the other officer at the scene, filed a report of the incident. His report stated that Jane Doe 3 was "extremely upset" and intoxicated. Officer Eskine also stated "I believe there were some false statements in her account of the incident" and that "[it] is my belief that an attempted rape never took place, but rather that [the alleged victim] became embarrassed when [Officer] Schaefer caught her with her pants down." The report also stated that "[t]here are some discrepancies in her story that have been proven otherwise by other witnesses." The "other witnesses" included the owner of a bar near the park, who told the officers that Cruz and Jane Doe 3 drank and danced together before leaving together on the night of the incident. The case was not further investigated until November 2016, when the police interviewed Jane Doe 3, who was now cooperating with the investigation. Unlike the other cases, Case #3 was not the result of a DNA match.

{¶30} Cruz argues the two officers and the bar owner, unavailable now, "could have provided exculpatory testimony which would have minimized or eliminated the impact of the state's case and bolstered that of appellant." Presumably, he expected Officer Eskine to testify to his opinion contained in the report that he believed the alleged attempted rape did not take place. It is only speculative, however, that the trial court would permit the officer to testify at trial about his opinion of whether the defendant was guilty. *State v. Battiste*, 8th Dist. Cuyahoga No. 102299, 2015-Ohio-3586, ¶ 35-36; *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 122 (a police officer's opinion that an accused is being untruthful is inadmissible). As for the bar owner,[3] the testimony regarding the drinking and dancing of

---

[3]Cruz fails to demonstrate the bar owner is "unavailable" — the extent of his investigator's testimony at the hearing on the motion to dismiss was that the investigator left business cards at the bar but did not hear back from the bar owner.

the victim and the defendant was of minimal relevance and purported effect on the defense. As such, Cruz fails to show actual prejudice resulting from the unavailable witnesses.

**4. Case #4 (July 19, 2004 — Jane Doe 4)**

{¶31} The state alleged that on the day of the incident, Jane Doe 4 met an individual by the name of Asburn Leigh in a house on West 71st Street. After having an argument with Leigh, Jane Doe 4 left to go a restaurant, where she met Cruz, an acquaintance. The two then left the restaurant and went to Cruz's house. While there, he asked for a kiss. When she refused, he pushed her to the ground, removed her pants and underwear, and vaginally raped her, while she repeatedly told him to stop. He also attempted to rape her anally. Afterward, Jane Doe 4 and Cruz went back went to the house on West 71st Street. She then went to a hospital, where a rape kit was collected. The treating physicians noted abrasions on her face and bruising around her groin. Cruz gave a statement to the police, claiming the sex was consensual. He admitted using crack cocaine with Jane Doe 4 on the night of the incident and alleged that, when Jane Doe 4 returned to the house on West 71st Street, she asked Cruz, in front of Leigh, to "settle" her debt she owed to Leigh in exchange for the sex she had with Cruz.

{¶32} The state's investigation ceased soon after. In 2014, Cruz's DNA was matched to Jane Doe 4's rape kit and the investigation was renewed.

{¶33} Cruz claims the unavailability of Leigh to testify prejudiced him. Even if Leigh were to testify exactly as Cruz alleged, the exculpatory value of that testimony is only conjectural because her words about "settling the debt" after the incident can be construed in many different ways. Although some prejudice may have occurred from the unavailability of this witness, Cruz's claim of actual prejudice is speculative at best. *Walls*, 96 Ohio St.3d 437,

2002-Ohio-5059, 775 N.E.2d 829, at ¶ 56 (concluding the defendant's claim of prejudice was speculative even though some prejudice may have occurred from lost evidence).

**{¶34}** In denying Cruz's motion to dismiss for preindictment delay, the trial court concluded Cruz only speculated about the exculpatory value of the testimony of purportedly unavailable witnesses in all four cases. For the reasons explained above, we agree with the trial court's determination.

**{¶35}** Under the two-step, burden-shifting analysis, once the defendant establishes actual prejudice, the burden would then shift to the state to produce evidence for a justifiable reason for the delay. *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 13. A delay in the commencement of prosecution is unjustified: (1) "when the state's reason for the delay is to intentionally gain a tactical advantage over the defendant," or (2) when the state "through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased." *State v. Luck*, 15 Ohio St.3d 150, 158, 472 N.E.2d 1097 (1984). The trial court in this case determined that nothing in the record suggested the state deliberately delayed the investigations to gain a tactical advantage. Because we have concluded Cruz fails to establish actual prejudice, we need not consider the reasons for the delay. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 107. Therefore, *State v. Dickerson*, 8th Dist. Cuyahoga No. 102461, 2017-Ohio-177, cited by Cruz on appeal, is distinguishable.

**{¶36}** For all the foregoing reasons, the judgment of the trial court is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

MARY J. BOYLE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR