[Cite as *State v. McClellan*, 2018-Ohio-3355.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Criag R. Baldwin, J. |
| -vs- | : | |
| | : | |
| WILLIAM PAUL MCCLELLAN, | : | Case No. 2017CA00193 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court
of Common Pleas, Case No. 2017-
CR-0568

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     August 20, 2018

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                    GEORGE URBAN
Prosecuting Attorney                    116 Cleveland Avenue NW, Suite 808
                                                    Canton, Ohio 44702

By: KATHLEEN O. TATARSKY
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza South – Suite 510
Canton, Ohio 44702-1413

*Baldwin, J.*

**{¶1}** Appellant, William Paul McClellan, was convicted by a jury of one count of rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. He was sentenced to life without the possibility of parole and declared a Tier III Sex Offender. He appeals his conviction as well as evidentiary rulings of the trial court. Appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND THE CASE

**{¶2}** Appellant was indicted and convicted of raping a seven year old child, A.B., the daughter of Amanda Nutt, Appellant's cousin, while he was serving as a baby sitter.

**{¶3}** Ms. Nutt and her husband made arrangements for Nicole Wallace, Appellant's girlfriend, to watch their children while they were at work. Ms. Wallace helped the older children get ready for school and then remained home with Ms. Nutt's infant daughter until Ms. Nutt or her husband arrived home. Appellant would often accompany Ms. Wallace and tend to his and Ms. Wallace's daughter while Ms. Wallace cared for Ms. Nutt's children. Appellant would watch the children if Ms. Wallace was unavailable. January 25, 2017 was one of the dates that Appellant watched the children without Ms. Wallace present.

**{¶4}** On January 25, 2017 Appellant sent all of the children to school with the exception of A.B.. He told A.B. that she was going to stay home and help him care for J.R.. Once the other children had left for school Appellant directed A.B to go to the couch, lie down on her belly and pull her pants and underwear down to her ankles. At that point he sexually assaulted A.B. and ejaculated on her buttocks.

{¶5} For reasons not explained, Appellant called Ms. Nutt and Ms. Wallace and told them that A.B. could not find her shoes and was going to stay home from school. Ms. Nutt insisted that A.B. had plenty of shoes and that Appellant was to take her to school. Appellant complied and delivered A.B. to school at 9:54 AM.

{¶6} A.B. came home after school and went upstairs to change. She was trembling, so her father asked her what happened. She described the assault and Mr. Nutt relayed the same to Ms. Nutt. Ms. Nutt took A.B. to Mercy Medical Center at the recommendation of law enforcement and then to Akron Children's Hospital.

{¶7} Penny Daly, social worker at Akron Children's Hospital, met the family and began the protocol required for an allegation of sexual assault of a child. Ms. Daly taped an interview of A.B. who repeated the allegations that she previously explained to her mother. Thereafter a nurse practitioner, Megan Dahlheimer, recommended a physical exam and collection of a sexual assault kit. A.B.'s underwear, purple and black long sleeve shirt and purple stretch jeans were collected by law enforcement and a sexual assault kit was collected.

{¶8} Detective Joseph Mongold of the Canton Police Department was assigned to investigate the allegations of A.B. He visited A.B's. school and learned she came in late on January 25, 2017. He went to Appellant's home on March 17, 2017 to speak with Appellant but Appellant was watching his infant daughter. Instead, Appellant agreed to come to the police station on March 20, 2017 where he participated in a videotaped interview. During that interview Appellant admitted sodomizing A.B. His description of the offense matched in all significant details with the story provided by A.B..

{¶9}   As part of the investigation of the alleged sexual assault, DNA was collected from the clothing of A.B.. That DNA and Appellant's DNA were delivered to the Ohio Bureau of Criminal Investigation. A test for male specific DNA, Y-STR, was completed on A.B.'s clothing at 25 different locations. Erika Jimenez, an analyst in the DNA Unit, testified that she was able to obtain a profile on 19 of those locations and all 19 were consistent with Appellant's DNA.

{¶10} The Stark County Grand Jury indicted Appellant on one count of rape, in violation of R.C. 2907.02 (A)(1)(b), a felony of the first degree.  Because the victim was under the age of 10, the count carried a potential imprisonment term of life without parole. Appellant initially pled not guilty and then filed a motion to plead not guilty by reason of insanity and requested a competency evaluation. The evaluator found Appellant competent to stand trial and the motion to plead not guilty by reason of insanity was withdrawn; the plea of not guilty remained and the case was set for trial.

{¶11} On August 16, 2017 Appellant filed a motion to suppress his confession. The motion was overruled but certain portions of the statement were deemed inadmissible. The Appellee played Appellant's recorded confession at trial with the appropriate edits.

{¶12} On September 8, 2017 Appellant filed a motion in limine to prohibit any reference to prior convictions from 2000 and 2006 involving rape and sexual imposition. Appellant also requested that the Appellant's comments regarding comparison of the victim's genitals to his own daughter's genitals be prohibited. The State complied and made no reference to either of those issues during trial.

{¶13} Prior to the commencement of the jury trial the victim was questioned by the trial court for competency. The trial court found that A.B. understood the court's questions and the difference between the truth and a lie and found her competent to testify. Appellant raised no objection to A.B.'s competency during this hearing or the trial.

{¶14} Also prior to trial an *Arnold* hearing was conducted to address the admissibility of statements made by A.B. to the social worker, Penny Daly and Megan Dahlheimer, the nurse practitioner. The trial court ruled that Daly could testify to the statements made by A.B. because they were made for the purpose of medical diagnosis and treatment, but nurse Dahlheimer could not give an opinion regarding whether the victim was sexually abused. While Ms. Daly did testify, the Appellee also played for the jury the videotaped interview of A.B. as conducted by Ms. Daly. Nurse Dahlheimer did not testify.

{¶15} Appellant did not object to playing the videotape of A.B. for the jury until that point in the tape where A.B. made statements regarding prior instances of abuse by Appellant. The trial court dismissed the jury and heard argument from counsel regarding whether the full tape should be played. After reviewing the video, the medical records, and the testimony of Penny Daly concerning the disclosures made to her during the interview of A.B., the trial court allowed the tape to be heard by the jurors after a limiting instruction and allowed the defense the opportunity to recall and question the victim about those other acts.

{¶16} Appellant moved for acquittal after the state rested and, after that motion was overruled, Appellant rested without presenting witnesses or recalling the victim. The jury was instructed, completed its deliberations and found Appellant guilty. Appellant

returned to court on September 15, 2017 and was sentenced to life in prison without the possibility of parole.

{¶17} Appellant filed a notice of appeal on October 11, 2017 and submits four assignments of error:

{¶18} "I. THE TRIAL COURT ERRED BY FINDING A.B., A CHILD UNDER THE AGE OF TEN, WAS COMPETENT TO TESTIFY."

{¶19} "II. APPELLANT'S CONVICTIONS (SIC) WERE AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE."

{¶20} "III. THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE THE STATEMENTS MADE BY A.B. TO PENNY DALY BECAUSE THE STATEMENTS WERE NOT MADE FOR THE PURPOSES OF MEDICAL DIAGNOSIS OR TREATMENT."

{¶21} "IV. THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE PORTIONS OF THE VIDEO THAT INTRODUCED OTHER ACTS EVIDENCE IN VIOLATION OF RULE 404(B) OF THE OHIO RULES OF EVIDENCE."

**ANALYSIS**

{¶22} In his first assignment of error, Appellant contends that the trial court erred when it found the victim, A.B., competent to testify. Appellant was offered the opportunity to question A.B. during the competency hearing, but chose not to do so. Further, Appellant did not object to the presentation of A.B.'s testimony at any time during the trial. For those reasons, we must review this assignment under the plain error standard.

{¶23} Crim. R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error under this rule is to be taken with the utmost caution, under exceptional

circumstances and only to prevent a manifest miscarriage of justice. *See: State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); *State v. Cooperrider*, 4 Ohio St.3d 226, 448 N.E.2d 452 (1983).

**{¶24}** The court conducted a hearing to establish the competency of A.B. as follows:

THE COURT: All right, we're on the record.

The Court is now going to be voir diring (sic) the alleged victim in this case,

[A.B.], relative to competency as required by law.

BY THE COURT:

Q. Good morning.

A. Morning.

Q. Good afternoon; it's almost 1:00.

Q. How are you?

A. Good.

Q. And what's your name?

A. [A.B].

Q. How do you spell that last name?

A. *****

Q. Okay. And where do you live?

A. Mi- I live in Minerva.

Q. Okay. And how old are you?

A. I'm eight.

Q. Eight years old. When was your birthday?

A.  March 5, 2009.

Q. Okay. So this past March you just turned eight, right?

A. (Nods affirmatively.)

Q. And so you're going to school in Minerva?

Is that right?

A.  (Nods affirmatively.)

Q. Say, say your answers out loud, okay, so we have a record of them. So

is that a yes?

A.  Yes.

Q. Okay. And what grade are you in?

A.  Third grade.

Q. Third grade. Do you like your teacher?

A.  Um-hum.

Q. Just start, back to school?

A. (Nods affirmatively.)

Q. Is that a yes?

A.  Yes.

Q. Yes. And what -- what's your favorite subject?

A.  Math.

Q. Math. Not recess?

A.  Kind of.

Q. Kind of. But you like math?

A. (Nods affirmatively.)

Q. Well, I'm going to ask you a couple questions now and I want you to tell me whether or not I'm telling you the truth or what I'm saying is somewhat - - seems wrong to you, okay.

Look outside right now. Can you see through the blinds there?

A. (Nods affirmatively.)

Q. If I told you that it was raining, would that be the truth or a lie?

A. A lie.

Q. Because?

A. It's not raining.

Q. It's not raining; the sun's shining. And if I said the ceiling was black, would that be the truth or a lie?

A. A lie.

Q. And that's because?

A. The ceiling ain't black.

Q. Now, what happens when you tell a lie?

A. You get in big trouble.

Q. Okay. And you understand the importance of telling the truth?

A. Um-hum.

Q. And if you don't understand something that's asked of you, can you make sure that you say I don't understand?

A. Yes.

Q. Okay.

THE COURT: Does anybody need to follow up any questions of the Court?

MS. DONNELLY: Not from the State, Your Honor.

MS. STOUT: No, Your Honor.

Tr. I, p. 175-178

**{¶25}** The trial court then concluded that A.B. understood the difference between the truth and a lie and the importance of telling the truth, leading the trial court to find her competent to testify in the case. Appellant offered no objection or comment regarding this finding.

**{¶26}** Every person is competent to be a witness except those of unsound mind, and children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly. Evid.R. 601(A). In determining whether a child under the age of ten is competent to testify, the trial court must consider: (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or her responsibility to be truthful. *State v. Frazier*, 61 Ohio St.3d 247, 574 N.E.2d 483 (1991). This court must find an abuse of discretion to reverse a finding of competency. *State v. Lewis*, 4 Ohio App.3d 275, 448 N.E.2d 487 (3rd Dist.1982).

**{¶27}** The Appellant concedes that the court's line of questioning satisfies the requirements for competency, but suggests that A.B.'s later testimony was inconsistent and suggestive of some lack of competency.

[I]t is not the role of the trial judge to determine that everything a child will

testify to is accurate, but whether the child has the intellectual capacity to

accurately and truthfully recount events. *State v. Leach* (Feb. 20, 2001), Clermont CA2000-05-033, unreported, at 5. Any inconsistencies between [A.B.'s] trial testimony and the testimony of other witnesses relate to [her] credibility, not [her] competency. See *id.; State v. Rayburn* (Apr. 24, 2000), Clinton CA99-03-005, unreported, at 6. [A.B.'s] credibility was for the jury's consideration.

*State v. Jones*, 12th Dist. Brown No. CA2000-11-032, 2001 WL 1402638, *6

**{¶28}** Based on A.B.'s testimony during the competency examination, we do not find that the trial court abused its discretion by finding A.B. competent to testify under Evid.R. 601 and the factors set forth in *Frazier.* Accordingly, Appellant's first assignment of error is overruled.

**{¶29}** In his second assignment of error, Appellant contends the conviction was against the sufficiency and manifest weight of the evidence. In reviewing a record for sufficiency, "the relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus. As the Supreme Court of Ohio stated in *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997): "With respect to sufficiency of the evidence, "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *Black's Law Dictionary* (6 Ed.1990) 1433. See also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a

conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955). In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663 (1982), citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶30} Appellant was charged with one count of rape, a violation of R. C. 2907.02 (A)(1)(b) when the victim was under the age of 10. The elements of the offense are:

No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

\*\*\*

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

\*\*\*

if the victim under division (A)(1)(b) of this section is less than ten years of age, in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code, the court may impose upon the offender a term of life without parole.

{¶31} "Sexual conduct" is defined in R.C. 2907.01 (A) as including "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into

the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

**{¶32}** Appellant confessed to this offense and the victim corroborated his confession by her testimony and by her statement to a social worker and those statements provided evidence for each element of the offense. For those reasons, we conclude there was sufficient evidence to support the conviction.

**{¶33}** We likewise find that the verdict was not against the manifest weight of the evidence. In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 1997-Ohio-52, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." Id. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶34}** The record contains nothing that would support a conclusion that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction

must be overturned and a new trial ordered." Therefore, Appellant's second assignment of error is overruled.

{¶35} Appellant's third and fourth assignments of error object to the court's ruling regarding evidentiary issues, so we will address those assignments simultaneously. The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987).

{¶36} Appellant contends, as his third assignment of error, that the admission into evidence of the statements made by A.B. to social worker Penny Daly was erroneous because the statements were not made for the purpose of medical diagnosis or treatment.

{¶37} The Supreme Court of Ohio held that "[r]egardless of whether a child less than ten years old has been determined to be competent to testify pursuant to **947 Evid.R. 601, the child's statements may be admitted at trial as an exception to the hearsay rule pursuant to Evid.R. 803(4) if they were made for purposes of medical diagnosis or treatment." *State v. Muttart,* 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944 (2007), syllabus.  In *Muttart* the court described a non-exhaustive list of considerations:

The trial court's considerations of the purpose of the child's statements will depend on the facts of the particular case. At a minimum, we believe that a non-exhaustive list of considerations includes (1) whether the child was questioned in a leading or suggestive manner\*\*\*; (2) whether there is a motive to fabricate, such as a pending legal proceeding such as a "bitter custody battle," \*\*\*; and (3) whether the child understood the need to tell the physician the truth, \*\*\*. In addition, the court may be guided by the age of the child making the statements, which might suggest the absence \*\*955 or presence of an ability to fabricate, and the consistency of her declarations. \*\*\*. In addition, the court should be aware of the manner in which a physician or other medical provider elicited or pursued a disclosure of abuse by a child victim, as shown by evidence of the proper protocol for interviewing children alleging sexual abuse. \*\*\*.

*Muttart*, at ¶ 49 (Internal citations and footnote omitted).

{¶38} The trial court conducted an *Arnold* hearing on August 30, 2017 and Appellee provided the testimony of Penny Daly, the social worker who performed the forensic interview of A.B. and Meghan Dahlheimer, the nurse practitioner to whom Ms. Daly relayed information for purposes of determining what medical treatment would be needed. Appellant had the opportunity to cross-examine both witnesses. At the conclusion of the evidence the trial court found that social worker Daly's "interview, statements attributed to the alleged victim, are admissible for diagnosis and treatment purposes." (August 30, 2017 Transcript of Hearing, pages 57-58). The court also noted that there were no "Crawford issues" since the ruling was based on the alleged victim

testifying and being subject to cross-examination. The trial court was not willing to sanction the testimony of Ms. Dahlheimer based upon her testimony at this hearing. Ms. Dahlheimer did not testify at the trial.

**{¶39}** During the *Arnold* hearing Ms. Daly repeatedly confirmed that the forensic interview was completed to insure that A.B. received proper medical care. The details gathered were conveyed to Nurse Dahlheimer who, during the *Arnold* hearing, confirmed that her recommended treatment for A.B. (physical exam and collection of rape kit) was based upon the details received from Ms. Daly.

**{¶40}** Appellant first argues that because the video of the interview between Ms. Daly and A.B. was not played at the *Arnold* hearing, the court erred by permitting the Appellee to play the video for the jury. The video was not at issue at the *Arnold* hearing. The trial court conducted that hearing only to determine if A.B.'s statements were testimonial or made for the purposes of medical treatment and therefore qualified for an exemption from the Hearsay Rule under Evid.R. 803(4). The State was not obligated to present the video to accomplish that goal. The video contained the same information that Ms. Daly was prepared to recount to the jury during her testimony. A.B. appeared in the video and testified before the jury. The Court offered Appellant the opportunity to recall A.B. to question her about the video, but he declined the offer.

**{¶41}** Appellant also contends that the information gathered by Ms. Daly was not sought for the purpose of medical treatment based upon Nurse Dahlheimer's recommendations and a comment by the trial court. Ms. Daly's unrebutted testimony at the *Arnold* hearing was that the information was gathered to facilitate medical treatment of A.B. The recommendation to collect a rape kit as part of an examination and the lack

of any medical treatment does not alter the purpose of the interview by Ms. Daly. The Appellant also contends the court erred based upon a remark that the ""methodology and training that she used was appropriate to elicit from the alleged victim the statements necessary for her to then recommend to other individuals, medical individuals, what action needs to be taken" (August 30, 2017, Tr. p. 57-58) contending that this refers to Ms. Daly making medical recommendations, which she did not do. We interpret this comment to refer to the gathering of the information by Ms. Daly and the recommendation issued by Nurse Dahlheimer as was demonstrated on the record. Regardless of the confusion caused by the use of pronouns in the trial court's comment, it was evident that Ms. Daly's goal was collection of information for the purpose of medical diagnosis.

**{¶42}** We hold that the trial court did not abuse it discretion by permitting the testimony of Ms. Daly or the playing of the recording of the interview of A.B. as that information was sought for the purpose of providing medical treatment. Appellant's third assignment of error is overruled.

**{¶43}** Appellant contends in his fourth assignment of error that the trial court erred by admitting that portion of the video containing "other acts evidence" in violation of Evid.R. 404(B). Specifically, he is referencing a statement by A.B. that Appellant had previously digitally penetrated her anus and that he whooped her with a belt.

**{¶44}** Rule 404(B) of the Ohio Rules of Evidence and R.C. 2945.59 preclude admission of other acts evidence to prove a character trait in order to demonstrate conduct in conformity with that trait. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 16. The Rules of Evidence and the Code carve out exceptions:

Evidence of other crimes, wrongs, or acts of an accused tending to show the plan with which an act is done may be admissible for other purposes, such as those listed in Evid.R. 404(B)—to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident—and in considering other acts evidence, trial courts should conduct a three-step analysis.

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*Williams*, at ¶¶ 19-20.

**{¶45}** This issue arose during the playing of the videotape of A.B.'s interview by Ms. Daly.  Appellant did not object to the use of the videotape until that point in the recording just before A.B. was to comment about Appellant's prior sexual abuse of her. The tape was stopped and Appellant explained his objection at the bench.  Appellee cited to the theory set out in *Williams*—that this evidence was not designed to show that the Appellant acted in conformity with his bad character, but only to show that A.B. was

"groomed" to be compliant with the Appellant's requests and instructions, as objectionable as they were. The trial court reluctantly agreed with the Appellee and provided a limiting instruction directing the jury to limit their consideration of the prior acts mentioned in the video to show only a "pattern of conduct or modus operandi on the part of the Defendant" and not for any other purpose. Appellant did not request any further limiting instruction be included in the jury instructions, and none was included. The video tape was admitted into evidence without objection and neither party made reference to the prior acts in closing.

**{¶46}** The Supreme Court of Ohio addressed a similar situation in *State v. Williams, supra,* where the State sought to introduce the prior acts of Williams with a juvenile who was not a victim in the case before the court. Williams objected that the introduction of this evidence was a violation of Evid.R. 404(B) and R.C. 2945.59 which prohibit introduction of "[e]vidence that an accused committed a crime other than the one for which he is on trial *** when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character. *Williams*, at ¶ 15. The State argued "that two independent bases exist to admit the other acts evidence in this case: the intent and the plan of the accused, i.e., intent of sexual gratification emanating from sexual conduct with teenage males and a specific plan to target vulnerable teenage boys and groom them for eventual sexual activity. *Williams*, at ¶ 12. The State made a similar argument in this case, that the acts of Appellant were preparation and plan of targeting or grooming AB, but we find that the facts herein are distinguishable from the facts of *Williams* and that when we apply the analysis of *Williams* to these facts, we find that the prior acts evidence was improperly admitted.

**{¶47}** We must first determine whether the other acts evidence is relevant to making any fact of consequence to determination of the action more or less probable than it would be without the evidence. The evidence may be relevant, but it does not show Appellant's preparation and plan of targeting or grooming A.B.

**{¶48}** The other acts evidence in Williams was of grooming techniques which were not criminal acts, but which ultimately resulted in criminal sexual acts. The defendant in Williams targeted, befriended, and mentored vulnerable teenage boys in an effort to gain their trust to facilitate his plan to engage in sexual activity with them. In the instant case, the other acts evidence is not of grooming techniques Appellant employed on the victim, but rather of independent criminal sexual acts on the victim which are qualitatively the same as the charged offense under the law. Appellant could have been charged with separate violations of R.C. 2907.02((A)(1)(b) for each act of digital and penile penetration. His prior acts of digital penetration were not an effort to gain her trust, or her compliance with his directions, but rather were separate, independent acts of rape. Because consent is not a defense to the charge of rape in this case and the defendant's intent is not as issue, the child victim's compliance with the directives of appellant or lack thereof was not relevant.[1]

**{¶49}** Further, in *Williams* the court found the testimony concerning the prior acts was relevant to show his intent was sexual gratification, citing R.C. 2907.01 and R.C. 2907.05(A)(1). *Williams, supra,* ¶22. R.C. 2907.05(A)(1) defines gross sexual imposition, with which Williams was charged, to require "sexual contact." R.C. 2907.01

---

[1] Under certain circumstances, the prior acts of lesser, illegal sexual conduct may be admissible to show scheme or plan of grooming the same victim for later, more serious sexual offenses when consent or the defendant's intent is at issue.

defines sexual contact to require the touching be for the "purpose of sexually arousing or gratifying either person." In the instant case, Appellant was charged only with rape, which does not require proof the conduct was for the purpose sexual arousal or gratification

{¶50} Further, in *Williams* the court found the testimony concerning the prior acts was relevant to show his intent was sexual gratification, citing R.C. 2907.01 and R.C. 2907.05(A)(1). *Williams, supra,* ¶22. Revised Code 2907.05(A)(1) defines gross sexual imposition, with which Williams was charged, to require "sexual contact." Revised Code 2907.01 defines sexual contact to require the touching be for the "purpose of sexually arousing or gratifying either person." In the instant case, Appellant was charged only with rape, which does not require proof the conduct was for the purpose sexual arousal or gratification

{¶51} The second step is to consider whether the evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith, or whether the other acts evidence is presented for a legitimate purpose. We find no legitimate purpose for which the evidence was admitted in this case other than to show Appellant acted in conformity with his past behavior with this victim.

{¶52} The final step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. As discussed above, the evidence was of very little relevance in this case other than to demonstrate Appellant acted in conformity with his pattern of having committed prior acts of rape against this same child victim. The admissibility of other acts evidence is carefully limited because of the substantial danger the jury will convict the defendant solely because it assumes the defendant has a propensity to commit criminal acts, or deserves punishment

regardless of whether he or she committed the crime charged in the indictment. *See State v. Curry,* 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975). This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature. *State v. Schaim,* 65 Ohio St.3d 51, 1992-Ohio-31, 600 N.E.2d 661 (1992). "Because of the severe social stigma attached to crimes of sexual assault and child molestation, evidence of these past acts poses a higher risk, on the whole, of influencing the jury to punish the defendant for the similar act rather than the charged act." *State v. Miley,* 5th Dist. Richland No. 2005-CA-67, 2006-Ohio-4670, ¶ 59. In a case where the evidence is of a particularly inflammatory nature, a curative instruction may be insufficient to cure the prejudicial effect. *State v. Patterson,* 5th Dist. Stark No. 2017CA00022, 2017-Ohio-8970, ¶¶ 36-37, *appeal not allowed,* 152 Ohio St.3d 1491, 99 N.E.3d 427, 2018-Ohio-2155.

**{¶53}** This case involves other acts evidence of prior acts of rape against the same victim, which were of limited probative value to the charged act of rape, but highly prejudicial due to the age of the victim and the inflammatory nature of the evidence. Although the limiting instruction may have lessened the impact of the evidence, we find the instruction insufficient to cure the prejudicial effect and the other acts evidence inadmissible.

**{¶54}** Notwithstanding our finding that the prior acts were not admissible, we find that their admission was harmless in this case considering the weight of the admissible evidence. The testimony of the victim, the victim's statements to the social worker and the Appellant's comprehensive confession are consistent, detailed and unrebutted and

supply the basis for a conviction even if the prior acts evidence had been excluded. *State v. Burge*, 5th Dist. Stark No. 2016CA00217, 2017-Ohio-7862, ¶ 30.

{¶55} We overrule Appellant's fourth assignment of error.

{¶56} The decision of the Stark County Court of Common Pleas is affirmed.


By: Baldwin, J.

Gwin, P.J. and

Hoffman, J. concur.